# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 27

OCTOBER TERM, A.D. 2012

March 7, 2013

BRANDON LEE JENSEN,

Appellant
(Plaintiff),

v.                                                          S-12-0080, S-12-0083

MARGARET E. MILATZO-JENSEN,

Appellee
(Defendant).

*Appeals from the District Court of Laramie County*
*The Honorable Thomas T.C. Campbell, Judge*

*Representing Appellant:*
> Brandon L. Jensen, *pro se,* of Budd-Falen Law Offices, LLC, Cheyenne, Wyoming.

*Representing Appellee:*
> Wallace L. Stock and Lance T. Harmon of Bailey, Stock & Harmon P.C., Cheyenne, Wyoming.

*Before KITE, C.J., and GOLDEN,\* HILL, VOIGT, and BURKE, JJ.*

*\*Justice Golden retired effective September 30, 2012.*

*VOIGT, J.,* delivers the opinion of the Court; *BURKE, J.,* files a concurring in part and dissenting in part opinion, in which *KITE, C.J.,* joins.

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**VOIGT, Justice.**

[¶1]   Brandon Lee Jensen, the appellant (Father), and Margaret E. Milatzo-Jensen, the appellee (Mother), divorced in 2007.  In the litigation that followed the divorce, the district court granted Mother's motion to modify the visitation schedule, denied Father's request to present expert testimony, denied Father's claims for child support abatement, denied Father's petition to modify child support, partially reimbursed Father's day-care expenses, and awarded attorney's fees to Mother.  Father now appeals those orders.

[¶2]   We affirm in part and reverse in part.

## ISSUES

[¶3]   1.   Did the district court abuse its discretion by modifying Father's visitation schedule?

2.   Did the district court abuse its discretion by denying Father's request to present the testimony of two expert witnesses?

3.   Did the district court err by denying Father's claims for abatement of child support?

4.   Did the district court abuse its discretion by denying Father's Petition to Modify Child Support?

5.   Did the district court abuse its discretion by not fully reimbursing Father for day-care expenses?

6.   Did the district court abuse its discretion in its award of attorney's fees against Father?

## FACTS

[¶4]   Mother and Father were married on November 29, 2003.  One child was born during that marriage on September 30, 2004.  After Father filed for divorce on August 29, 2006, the district court entered a divorce decree on May 22, 2007.  The district court awarded primary residential custody of the child to Mother and ordered that the parties share joint legal custody of the child.  More facts will be provided as they become relevant.

1

# DISCUSSION

## *Did the district court abuse its discretion by modifying Father's visitation schedule?*

[¶5]    On June 27, 2007, one month after the divorce decree was entered, Mother and Father jointly stipulated to modify Father's visitation schedule, entitling him to five overnight visits every two weeks, alternating holidays, and two one-week visits during the summer.  In 2010, the two one-week summer visits were to be replaced with a sixty-day visit.  Father moved to Wellington, Colorado, on or around July 1, 2010.  Aware of Father's impending move, Mother filed a second motion to modify father's visitation schedule on June 17, 2010, alleging that the relocation was a material change in circumstances sufficient to warrant modification.

[¶6]    Following a trial, the district court agreed with Mother that a material change in circumstances had occurred because of Father's relocation to Colorado and continuing acrimony between the parents and found that a reduction in Father's visitation would be in the child's best interest.  Father now appeals that decision.

[¶7]    Adjustments to visitation orders are made within the sound discretion of the district court.  *In re Paternity of JWH*, 2011 WY 66, ¶ 5, 252 P.3d 942, 945 (Wyo. 2011).

> In determining whether an abuse of discretion has occurred, our primary consideration is the reasonableness of the district court's decision in light of the evidence presented. We view the evidence in the light most favorable to the district court's determination, affording every favorable inference to the prevailing party and omitting from our consideration the conflicting evidence.

*Id*. at ¶ 6 (quoting *Durfee v. Durfee*, 2009 WY 7, ¶ 6, 199 P.3d 1087, 1089 (Wyo. 2009)).

[¶8]    Modification of a visitation order requires a two-step analysis.  *In re TLJ*, 2006 WY 28, ¶ 8, 129 P.3d 874, 876 (Wyo. 2006).   There must be "a material change in circumstances since the entry of the order" and a finding that "modification would be in the best interests of the children pursuant to W.S. 20-2-201(a)."  Wyo. Stat. Ann. § 20-2-204(c) (LexisNexis 2011).   Before a court may consider whether a modification of a visitation arrangement would be in the best interest of the child, there must be a material change in circumstances sufficient to warrant such an inquiry.  "The district court does not properly acquire jurisdiction to reopen an existing custody order until there has been a showing of 'a substantial or material change of circumstances which outweigh society's interest in applying the doctrine of res judicata' to a custody order."  *In re TLJ*, 2006 WY 28, ¶ 8, 129 P.3d at 876 (quoting *Kreuter v. Kreuter*, 728 P.2d 1129, 1130 (Wyo. 1986)).

2

[¶9]   Father argues that the district court abused its discretion by modifying the visitation schedule because there was no material change in circumstances warranting an inquiry into whether such a modification was appropriate, nor was a modification in the best interest of the child.  It is well established by Wyoming case law, he continues, that relocation cannot be considered a material change in circumstances.  We have very recently, however, altered our position on the significance of relocation to better take into account the needs of the child involved in custody and visitation disputes.

[¶10]  Relying upon the constitutional right to travel,  we have said  in the past  that "relocation, by itself, is not a substantial or material change in circumstances sufficient to justify a change in [a] custody order."  *Watt v. Watt*, 971 P.2d 608, 614 (Wyo. 1999).  After a thorough review of *Watt* and the cases upon which it relied, as well as cases critical of *Watt* from other jurisdictions, we specifically overruled *Watt* and held that "relocation by the primary physical custodian, as well as 'factors that are derivative of the relocation'--including 'the inherent difficulties that the increase in geographical distance between parents imposes'--may constitute a material change in circumstances sufficient to warrant consideration of the best interests of the children."  *Arnott v. Arnott*, 2012 WY 167, ¶ 40, 293 P.3d 440, 458 (Wyo. 2012).

[¶11]  Here, Father, the noncustodial parent,  moved from Cheyenne, Wyoming,  to Wellington, Colorado, a distance of about forty miles.  Following a trial, the district court granted Mother's motion to modify the visitation order, finding that a material change in circumstances was present.  Although the district court did not rely solely upon Father's move to Wellington in determining that there was a sufficient change in circumstances justifying an inquiry into whether a modification was in the best interest of the child, our decision in *Arnott* makes it clear that such a relocation may be a sufficient change in circumstances.

[¶12]  When the visitation order was established, Mother and Father lived within four blocks of one another and within four blocks of the child's school in Cheyenne.  The parties must have necessarily contemplated their proximity to one another when they settled on the terms of the visitation schedule.  When Father moved to Colorado, despite continuing to maintain employment in Cheyenne, the daily life the parties contemplated for their child ceased to exist.  "[I]t is difficult to imagine an instance in which a proposed relocation will not render an existing parenting plan or custody-and-visitation arrangement unworkable."  *Arnott*, 2012 WY 167, ¶ 35, 293 P.3d at 456 (quoting *Jaramillo v. Jaramillo*, 823 P.2d 299, 309 n.9 (N.M. 1991)).  It is important to point out that we are not holding that a parent's relocation always necessitates a modification of a visitation arrangement.  "[A] material change of circumstance does not automatically equate with a change in custody.  Custody must be arranged so as to be in the best interests of the child(ren) on an individualized basis."  *JRS v. GMS*, 2004 WY 60, ¶ 13, 90 P.3d 718, 724 (Wyo. 2004).  But the issues created by Father's move to

Colorado in the instant case preclude the application of *res judicata* and require an inquiry into whether modification of visitation would be in the best interest of the child.

[¶13]  Part of our basis for overruling *Watt* was our concern that it marginalized "the state's interest in the welfare of children." *Arnott*, 2012 WY 167, ¶ 32, 293 P.3d at 495. The child in the instant case was seven years old at the time of the appeal.  Prior to the modification that is currently being appealed, the visitation order prescribed, on an alternating basis, two consecutive midweek overnight visits with Father lasting from 8 a.m. Wednesday until 8 a.m. Friday, and, on the following week, three consecutive overnight visits with Father from 8 a.m. Friday until 8 a.m. Monday.  This schedule involved the child, over the course of one seven-day period, spending three nights in Father's household, then two nights in Mother's household, followed by two nights again in Father's household, prior to a subsequent return to Mother's home.  This schedule was greatly impacted, however, when father moved, adding six separate forty-mile commutes to and from school.  "[S]tability in a child's environment is of utmost importance to the child's well-being." *Testerman v. Testerman*, 2008 WY 112, ¶ 15, 193 P.3d 1141, 1145 (Wyo. 2008) (quoting *Reavis v. Reavis*, 955 P.2d 428, 432 (Wyo. 1998)).  Mother testified that the child was returning from Wellington more tired than usual and that her energy has diminished.  The district court did not abuse its discretion in determining that a modification of the visitation schedule was in the best interest of the child.[1]

### *Did the district court abuse its discretion by denying Father's request to present the testimony of two expert witnesses?*

[¶14]  Father sought to present the testimony of two expert witnesses.  Their testimony, he argues, was relevant to discerning the best interest of the child and would support his contention that the then existing visitation schedule was reasonable.  The district court, however, excluded the testimony of these witnesses following Mother's oral motion *in limine.*  "A decision to admit or reject expert testimony rests solely within the discretion of the district court and is not disturbed on appeal absent a clear showing of an abuse of discretion." *Dean v. State*, 2008 WY 124, ¶ 14, 194 P.3d 299, 303 (Wyo. 2008).

[¶15]  The district court found that proposed expert witness Dr. Denison had a conflict of interest as a result of serving as a mediator for the parties and, therefore, would be

---

[1] Father also appeals the denial of his motion for summary judgment related to Mother's first motion to modify the visitation schedule filed on October 21, 2008.  Despite the fact that Mother's motion was dismissed on June 29, 2009, the district court reopened the case on September 15, 2009, and scheduled a hearing for summary judgment.  On August 24, 2010, the district court denied the motion for summary judgment.  Shortly before that, Mother filed her second motion to modify visitation.  This motion differed from the prior one in that it was based, in part, on Father's impending move to Colorado.  Because we are affirming the modification of visitation based on this latter motion, we see no need to address the denial of Father's summary judgment motion.

4

precluded from testifying. The district court also limited the scope of the testimony of expert witness Renee Hansen to the impact on children of traveling as a result of visitation orders involving parents living far apart from one another. The district court specifically disallowed Ms. Hansen from testifying regarding the best interest of the child in the instant case.

[¶16] We cannot find how either of these restrictions represent an abuse of discretion on the part of the district court. It is not beyond the bounds of reason for the district court to be concerned that a witness previously involved with Mother and Father as a mediator in their divorce proceedings may have become biased for or against one of the parents. With regard to Ms. Hansen, the district court determined that her testimony would present an evaluation of the custodial arrangement. The district court did not abuse its discretion in restricting the scope of Ms. Hansen's potential testimony because the custody of the child was not a matter in dispute.

### Did the district court err by denying Father's claims for abatement of child support?

[¶17] Father filed three separate claims for abatement of child support. All three were denied and Father now appeals those denials. In its entirety, the district court's decision was as follows: "The abatements now pending before the court are denied. They were procedurally defective, through the fault only of the Court order previously put into place by agreement of the parties and drafted by [Father]." Neither appellate brief was able to clarify "the fault" of the previous order referred to by the district court, nor can we ascertain the meaning and significance of the reference. Nevertheless, we will address the arguments made by Mother and Father on appeal.

[¶18] The parties' briefs suggest that the facts relevant to this issue are not in dispute. Rather, their arguments are focused on the requirements and application of the abatement statute. We review such questions of law *de novo*. *Plymale v. Donnelly*, 2007 WY 77, ¶ 21, 157 P.3d 933, 938 (Wyo. 2007).

[¶19] Abatement of child support is a statutory creation. Its requirements are clear:

> (a) Unless otherwise ordered by the court, child support shall abate by one-half (1/2) of the daily support obligation for each day the noncustodial parent has physical custody of the child for whom support is due, provided that the noncustodial parent has custody of the child for fifteen (15) or more consecutive days. For the purposes of computing abatement and determining whether the noncustodial parent has met the consecutive day requirement of this subsection, overnight and weekend visits with the custodial parent during

the period for which abatement is claimed shall be disregarded.

. . . .

(h) For purposes of this section, "weekend" means any two (2) consecutive days, except if a legal holiday precedes or follows the days constituting a weekend under this section the weekend shall consist of three (3) days.

Wyo. Stat. Ann. § 20-2-305 (LexisNexis 2011).

[¶20] Father's first Claim for Child Support Abatement was filed on July 9, 2009. Father claimed that from June 12 through July 5 of that year he had custody of the child for twenty-four consecutive days. Based on the calendar supplied by Mother and her own calculations, Father had custody of the child for nineteen days over that time period, which was only twice interrupted by "weekend" visits with Mother, lasting two days each. Father filed his second claim on November 10, 2009, for the period October 14 through November 5, claiming twenty-three days of consecutive visitation. In her objection to Father's claim, Mother again included a calendar detailing the child's visits with Father. According to her calendar, over the claimed period of time the child spent fifteen consecutive days in the custody of her Father, interrupted by four separate two-day "weekend" visits with Mother. Father's final claim, filed April 20, 2010, was for the period March 21 through April 11, during which time he claimed to have twenty-two consecutive days of custody of the child. According to the calendar supplied by Mother, from March 21 through April 10, Father had custody of the child for sixteen consecutive days, interrupted by two "weekend" visits with mother for two nights, and a single one-day overnight visit with Mother.

[¶21] Mother objected to all of the claims on the grounds that Father's calculation of the fifteen consecutive days impermissibly combined routine visitation nights and holiday visitation nights to come up with the total number of consecutive nights. We find this argument without merit. Mother gives no reason nor citation to authority suggesting why a noncustodial parent seeking abatement of child support may not combine regular visitation with holiday visitation to reach the fifteen day threshold. The statute is clear-- fifteen consecutive days of custody entitles the noncustodial parent to abatement of his child support obligation, no matter if the custody was a result of a regularly scheduled visit, a holiday visit, a rescheduled visit, or otherwise. A parent seeking abatement simply must show that he or she was in custody of the child for the requisite time period, and that such period was not interrupted by more than a "weekend" visit with the custodial parent.

6

[¶22] Mother also objected to the claims because Father refused to pay for day-care expenses during the period for which abatement was claimed. She reasons that he cannot be entitled to abatement if he is not willing to pay all of the child's expenses during the time period for which abatement is sought. Father, however, was not required to pay day-care expenses. According to the Decree of Divorce, once Father "begins making child support payments, he shall have no obligation to continue paying one-half day-care expenses." The purpose of the abatement statute is to give the noncustodial parent a break in his or her child support obligation if he or she has custody of the child for an extended period of time. The statute says that child support shall abate by 50 percent. The reason the support obligation does not abate by 100 percent is the custodial parent will not be able to cut all costs associated with being the primary custodial parent just because the child is away for fifteen days. The record does not, however, reflect any reason that Father should not be entitled to the 50 percent abatement. We reverse and remand to the district court to determine the appropriate amount of abatement in line with the holding of this opinion.

### *Did the district court abuse its discretion by denying*<br>*Father's Petition to Modify Child Support?*

[¶23] The visitation schedule established in June 2007, prior to the district court's modifications, provided that Father would have visitation with the child for five overnights every two weeks, alternating holidays with Mother, and two one-week visitations every summer. In 2010, the two one-week visits were to be replaced by a sixty-day summer visit with Father. The order also provided that "Based upon the visitation schedule as set forth in paragraph five,[2] modification of child support will not occur at this time."

[¶24] On January 14, 2010, coinciding with the increase to a sixty-day summer visitation, Father petitioned the district court to reduce his child support obligation, relying upon the following statute: "When each parent keeps the children overnight for more than forty percent (40%) of the year and both parents contribute substantially to the expenses of the children in addition to the payment of child support, a joint presumptive support obligation shall be determined by use of the tables." Wyo. Stat. Ann § 20-2-304(c) (LexisNexis 2011). Additionally, a petition to modify child support must also show that "the support amount will change by twenty percent (20%) or more per month from the amount of the existing order." Wyo. Stat. Ann. § 20-2-311(a) (LexisNexis 2011). Father argues that as a result of the extended summer visitations, both he and Mother will have custody of the child for more than 40 percent of the year. Using the shared custody calculations, he continues, would result in a greater than 20 percent reduction in the support he currently owes.

---

[2] Paragraph five provides for the two one-week summer visits with Father.

[¶25] The district court's order denying Father's petition to reduce his child support obligation was based on the time father was projected to have custody of the child under the prior visitation order (i.e., the schedule modified in the same order). The decision letter begins by addressing the requirement that an appropriate modification in support will result in a greater than 20 percent adjustment. Based on updated verified financial statements indicating an increase in Father's net monthly income and a decrease in Mother's net monthly income, the district court calculated Father's proportionate share of child support to be $847.38 per month. The district court determined that this amount does not represent a greater than 20 percent change when compared to his prior obligation of $724.66. The fact that the district court's calculations actually represented an increase in Father's support obligation is suggestive of a potential inaccuracy. Father's petition was based on his contention that he was in custody of the child for more than 40 percent of the year and contributed substantially to the child's expenses, entitling him to the shared custody support calculation in accordance with Wyo. Stat. Ann. § 20-2-304(c). Although this discrepancy is not fully developed in either of Father's briefs, such a calculation would result in a monthly support obligation of $286.53, which is certainly more than a 20 percent reduction from his current obligation.

[¶26] The district court continued by addressing whether Father met the 40 percent requirement and the substantial contribution requirement. Along with his petition, Father submitted to the district court a calendar of the 2010 visitation schedule. That schedule indicates 152 days of visitation, or 41.6 percent. Neither Mother nor the district court challenged the accuracy of the schedule. The district court's entire findings regarding the 40 percent requirement were as follows:

> [E]ven [Father's] evidence under the existing schedule, if accurate, barely meet[s] the forty percent (40%) requirement of the statute concerning presumed child support for shared custody. That is, depending on the hit and miss of an overnight here or there, he may or may not have made forty percent (40%) in any given year.

This finding is insufficient and not in keeping with the statutory requirement. It is immaterial that Father "barely met" the 40 percent threshold. The statute requires that each parent have custody of the child for more than 40 percent of the year. One-hundred-forty-six days represents exactly 40 percent of our three-hundred-sixty-five-day calendar. Father had custody of the child for 152 days. Neither Mother nor the district court gave any indication that Father over-calculated his visitation, and this Court cannot ascertain any such error based upon a review of the visitation order and the calendar provided by Father.

[¶27] The district court also determined that Father failed to contribute substantially to the expenses of the child. In *Cranston v. Cranston*, this Court affirmed the district

court's determination that the father did not contribute in a substantial way to the expenses of the child. 879 P.2d 345, 351 (Wyo. 1994).

> The mother established that she maintained the children's primary residence and provided for all of the children's necessities, including clothing and toys. She also provided clothing, personal hygiene items and toys for the children to use during their visits with the father. The mother also paid for extracurricular activities the children participated in, even during their stays with the father.
>
> . . . .
>
> . . . the father provided evidence of only nominal contributions to the expenses of the children, including child care costs and magazine subscriptions. The father offered no evidence that he had increased expenses for a larger apartment or home to provide the children with living space while they were in his custody. The father offered no evidence of increased food, heating, or utility expenses while the children were in his custody. Finally, the father offered no evidence of providing for the needs of the children with clothing, toys or other necessities at any time.

*Id*. Another case in which we affirmed the district court's determination that the father's contributions were not substantial was based on the following evidence:

> Mother testified that Father did not contribute to her school clothes and intimate apparel, although Father purchased five or six items of used clothing during the last school year. Mother stated that Father refused to contribute toward the school supplies required at the beginning of the school year and that Mother paid for all school lunches, all medication, and had covered the total medical bill on two or three occasions. Mother also testified that her daughter's growth required several new pairs of shoes each year and that she needed child support to provide the basic items needed. Extras provided by Mother included swimming lessons, choir supplies, flute lessons, a bicycle for home and one for Father's house, which was sold to help pay for the new bicycle purchased by Father.

*Fountain v. Mitros*, 968 P.2d 934, 939 (Wyo. 1998). In the instant case, Father's testimony at trial, accompanying exhibits, and briefs are replete with details of his expenses related to the child. In summation, the receipts and testimony itemize the following expenditures incurred by Father: a full wardrobe including accessories and outerwear, toys, bicycle, video games, stuffed animals, an aquarium, swimming lessons, cheerleading camp, books, membership in a book club, school supplies, arts and crafts materials, all meals, including school lunches, while in Father's custody, increased heating and utility expenses, ski trips, airline tickets, and visits to zoos, museums, and planetariums. All of this is in addition to the child support obligation he has consistently timely paid to Mother.

[¶28] Neither the district court nor Mother denied that Father made these expenditures or that these were substantial expenditures. Instead, the district court determined that these were not the type of expenditures envisioned by the legislature.

> [H]is long and very detailed list of expenses is not the kind of substantial additional contribution that the statute calls for. He clearly has spent a lot, not due to extra resources he's brought to bear for the good of his daughter, but instead, related to the necessities of being the non-custodial parent. Said another way, the court has no dispute with the fact that he spent the money, but does not feel that they are the kind of ***extraordinary expenses*** contributing towards the care of the minor called for in the shared custody computation. Instead, they are the costs he contributes to care of the child while the child is in his custody, and some relate to his move and his general refusal to cooperate with the custodial parent on everything from clothes to entertainment.

(Emphasis added.) The statute does not require a showing of extraordinary expenditure, but rather a "substantial" contribution to the expenses of the child. The district court acknowledged that Father "spent a lot," but simply chose to disagree with the type of expenditures that were made. The district court also described these expenses as the "necessities of being the non-custodial parent." Such necessities, however, and the substantial expenses required by the statute, are not mutually exclusive items. In fact, they are necessarily the same. Few parents would suggest that a child's necessities do not represent a substantial monetary investment. Finally, the district court suggested that some of the expenditures were related to Father's inability to cooperate with Mother. Inasmuch as the former spouses' inability to cooperate with one another is what led to the separate households, and to the additional expenses, we are not inclined to consider that factor as somehow negating the need for those additional expenses.

10

[¶29] A substantial contribution provides "something worthwhile, of real worth and importance, as distinguished from providing for expenses which are merely nominal or without value to the children." *Cranston*, 879 P.2d at 350. It is clear that Father's expenditures were well beyond those deemed insubstantial in both *Cranston* and *Fountain* and represent items that are of value to a child's well-being, development, and happiness. If these expenses are not "substantial," it is not clear what could satisfy this requirement. For these reasons, we find that the district court abused its discretion in determining that the appellant did not meet the requirements of Wyo. Stat. Ann. § 20-2-304.

[¶30] Unfortunately for Father, because of the changed visitation schedule, which we affirmed above, these calculations are rendered immaterial because they were based upon the old visitation schedule. As a result of the modification, Father does not meet the 40 percent requirement of Wyo. Stat. Ann. § 20-2-304(c) and cannot show a greater than 20 percent change in his support obligation. A modification to the child support obligation of Father would be inappropriate and the district court is affirmed in that regard.

[¶31] Father argues that should we uphold the modification to the visitation schedule, as we did, he is owed reimbursement for his overpayment while his request for a reduction in child support was pending prior to the district court's modification of the visitation schedule. In making this argument, Father relies upon the following:

> (d) An order for child support is not subject to retroactive modification except:
>
> . . . .
>
> (ii) The order may be modified with respect to any period during which a petition for modification is pending, but only from the date notice of that petition was served upon the obligee as provided by the Wyoming Rules of Civil Procedure, if the obligor or the department is the petitioner, or to the obligor, if the obligee or the department is the petitioner.

Wyo. Stat. Ann. § 20-2-311(d)(ii) (LexisNexis 2011). Retroactive modification is within the discretion of the district court. *See Ready v. Ready*, 2003 WY 121, ¶ 20, 76 P.3d 836, 841 (Wyo. 2003); *Houston v. Smith*, 882 P.2d 240, 245 (Wyo. 1994). In the instant case, the district court made no determination on the issue because Father did not request

retroactive modification at the trial level. Furthermore, inasmuch as child support was not modified, retroactive modification was not available.[3]

### Did the district court abuse its discretion by not fully reimbursing Father for day-care expenses?

[¶32] On December 3, 2010, Father filed a Motion for Reimbursement of Child Care Expenses. During the sixty-day summer visitation with the child in 2010, Mother stopped paying for day-care. Father paid the $667.50 owed to cover this debt. In response to Father's motion, the district court ordered Mother to reimburse Father one-half of Father's summer 2010 day-care expenses, or $333.75. Father now appeals that decision, arguing that he was entitled to a reimbursement in the full amount of the expenses paid. We review claims for a reimbursement of day-care expenses for an abuse of discretion. *Scaling v. Scaling*, 805 P.2d 866, 870 (Wyo. 1991).

[¶33] The district court based its decision on its incorrect finding that day-care expenses were to be shared equally between Mother and Father. To the contrary, the divorce decree provides that "[W]hen [Father] begins making child support payments, he shall have no obligation to continue paying one-half daycare expenses." No allegations have been made that Father failed to pay his child support obligation in a timely manner during the summer of 2010. Under the terms of the order, Mother is required to continue to pay day-care expenses, even when Father enjoys extended summer visitations with the child, just as Father continues to pay child support during this period. The district court abused its discretion in not requiring Mother to reimburse Father fully for the day-care expenses.

### Did the district court abuse its discretion in its award of attorney's fees against Father?

[¶34] Prior to trial, Father filed two motions to compel answers to interrogatories related to Mother's employment status. Ultimately, following related motions and hearings, those motions were denied. In its decision letter, the district court ordered Father to pay attorney's fees to Mother related to Father's denied motions to compel. Father now appeals that decision arguing that the district court did not assess the reasonableness of the costs charged.

[¶35] This Court reviews an award of attorney's fees for an abuse of discretion. *Jones v. Artery*, 2012 WY 63, ¶ 8, 275 P.3d 1244, 1247 (Wyo. 2012). "In every action brought for divorce, the court may require either party to pay any sum necessary to enable the other to carry on or defend the action . . . ." Wyo. Stat. Ann. § 20-2-111 (LexisNexis 2011). This statute empowers the district court with broad discretion in its decision to award attorney's fees. *Roberts v. Roberts*, 816 P.2d 1293, 1298 (Wyo. 1991). "Of

---

[3] The above-cited statute does not provide reimbursement for an overpayment of child support.

course, the party seeking to recover attorney's fees bears the burden of demonstrating the reasonableness of the fees and must also submit an itemized billing reflecting the time and rate charged." *Rocha v. Rocha*, 925 P.2d 231, 234 (Wyo. 1996).

[¶36] In its decision letter, the district court ordered Mother's attorney to prepare a certificate of costs related to his work defending Father's motion to compel. In response, Mother submitted an itemized list of her attorney's fees related to the motion, amounting to just over fifteen hours of work at $190.00 per hour, for a total of $2,796.50. Father filed his objection to Mother's certificate of costs, arguing that the costs charged were unreasonable.[4] Father specifically attacked the reasonableness of certain items included in the certificate of costs, arguing that Mother's attorney was responsible for drafting just a single order and a single motion, neither containing any citation to authority or indicating that research was necessary, and that both hearings on the motion to compel lasted just fifteen minutes each. Mother did not reply to Father's objection.

[¶37] Two months later, a hearing was held. Father renewed his objections made in his response to the certificate of costs. At this point, we will reiterate that the burden fell on Mother to prove the reasonableness of the attorney's fees requested; it was not Father's responsibility to prove that the charges were unreasonable. Mother's attorney's presentation at the hearing began by indicating that he is often surprised how quickly attorney's fees add up in divorces. He next indicated that, since the fees awarded were to be solely based on the motions to compel, he should not have included $300 in the certificate of costs that were unrelated to the motion to compel, but rather were his fee for preparing the certificate of costs itself.[5] However, he added that "everything else [] was reasonable." Rather than support that conclusion or respond to Father's arguments, the attorney simply stated that "All this stuff is what was done in response to the motions [Father] filed . . . ." He closed by arguing that the hourly rate is reasonable because it is less than what his colleagues charge and he has since raised his rate.

[¶38] In *Rocha*, the party seeking attorney's fees submitted an itemized list of fees incurred at the hearing. 925 P.2d at 234. The party opposing the award of attorney's fees did not object to its introduction. Even though the only evidence of reasonableness was the itemized list, because the opposing party did not object, we permitted the district court to rely solely on the itemized list and the factors in Wyo. Stat. Ann. § 1-14-126(b) (LexisNexis 2011), and we affirmed the award of attorney's fees. In the instant case,

---

[4] Father also argued that, at trial, Mother attempted to admit an exhibit which purportedly showed that the attorney's fees were much less than those in the itemized list provided by Mother. That exhibit, however, was never admitted as evidence at trial and, therefore, necessarily could not have been considered by the district court, nor can we consider it now.

[5] Father made this point in his objection to the certificate of costs as well, although he indicated that the itemization of this fee was $380 for two hours of work, rather than $300. He is correct.

however, Father objected to the certificate of costs, both in writing and at the hearing. In *Weiss v. Weiss*, we also affirmed an award of attorney's fees and found that mother did prove reasonableness:

> Mother's motion was fifteen legal pages in length, with minute detail as to all that was involved in incurring the fees and costs. Attached to the motion was the affidavit of Mother's attorney, once again detailing the work done, the complexities of the case, the reasonableness of the hourly rate charged by himself and by other retained counsel, and attaching as exhibits thereto his itemized legal bills and those of other retained counsel. In addition, the record contains the transcript of the motion hearing during which counsel argued as to the reasonableness of the attorneys' fees.

*Weiss v. Weiss*, 2009 WY 124, ¶ 12, 217 P.3d 408, 411 (Wyo. 2009). Such detail may not always be necessary. Here, however, Mother offered no real evidence that the hours incurred at the fees charged were reasonable. Father made cogent arguments attacking the necessity for and accuracy of the work performed; none of those arguments were addressed by Mother either before the district court or on appeal. Because neither we, nor the district court, could determine from the record presented that the fees were reasonable, we find that the district court abused its discretion in awarding attorney's fees.

## CONCLUSION

[¶39]  Father's move to Colorado, which substantially disrupted the visitation schedule and substantially impacted the child's life, represented a substantial change in circumstances sufficient to address whether a modification in the visitation schedule would be in the best interest of the child. Because of the long and frequent commutes, and the stress incurred by the child, the district court did not abuse its discretion in determining that a modification was appropriate. Father did not show on appeal that the district court abused its discretion in excluding an expert witness with a potential conflict of interest and limiting the testimony of another expert witness by permitting her only to testify with regard to matters in dispute. Father meets the statutory requirements for abatement in child support. We remand to the district court for a determination of the appropriate amount of that abatement. Because we affirm the modification to the visitation schedule, which results in a reduction in Father's time with the child, Father is not entitled to application of the shared custody support calculation provided in Wyo. Stat. Ann. § 20-2-304(c). The district court abused its discretion by only partially reimbursing Father for day-care expenses because the divorce decree did not require Father to pay any day-care expenses while he was paying child support. The district

14

court also abused its discretion in its award of attorney's fees against Father because Mother presented insufficient evidence indicating that the fees requested were reasonable.

[¶40]  Affirmed in part, reversed in part, and remanded to the district court for further appropriate action consonant herewith.

**BURKE,** Justice, concurring in part and dissenting in part, with whom **KITE,** Chief Justice, joins.

[¶41] I am in general accord with the result reached in the majority opinion. However, I disagree with the majority's treatment of the attorney fee issue and dissent from that portion of the opinion.

[¶42] Before addressing that issue, further comment regarding the district court's decision to modify visitation is warranted. The majority focuses upon the move to Wellington as the primary factor supporting modification, and I take no issue with that aspect of the opinion. It should be made clear, however, that the move was not the sole basis for the district court's decision. Father's conduct also played a significant role.

[¶43] In its decision letter, the district court explained:

> As first alleged, the motion to modify seemed to rely on a continual exacerbation of long-standing issues concerning the defendant's ability to communicate with the plaintiff as well as the plaintiff's behavior towards her and in the presence of her child. With a subsequent move of the plaintiff across state lines, approximately forty (40) miles away, the allegations were somewhat more substantial. While none of those claims or allegations standing alone might be considered a material change, in the context of the evidence presented in this case the Court finds that the defendant has [met] her burden on that issue. By way of example, the Court notes that the plaintiff, while asserting no change in circumstances has occurred, presents evidence himself of frequent communication difficulties, sometimes resulting in heated exchanges, and even the involvement of law enforcement authorities. In fact, at one point in his testimony the plaintiff describes his disappointment that law enforcement would not, upon his request, intervene to assist him as to his visitation issues. The plaintiff gives no weight whatsoever to the involvement of the police and how that [a]ffects [the child], who has aged from 3½ to 6 during the pendency of this last round of litigation. It appears from the plaintiff's testimony that because the defendant, admittedly, also reacts inappropriately on some occasions when communication breaks down, that the Court should give little or no weight to his role in these exchanges. Other significant issues have developed since the entry of the last order including the plaintiff's refusal to communicate by email or

16

text message with the mother. In addition, the plaintiff has on a number of occasions refused to allow the participation of [child's] step-father, defendant's new husband. This occurs in circumstances such as not leaving the child at the mother's home merely because the mother doesn't happen to physically be there at the time. The plaintiff offers no explanation or justification as to how it is contrary to the safety or well-being of the child to drop her off at her own home.

The evidence was replete with comments by the plaintiff that clearly indicate he stands by his decision making in this regard without having given it the least bit of thought in terms of the impact on the best interests of his daughter. Instead, he evidences in all of his testimony and comments a strong desire to control everything about custody and visitation including his former wife's new family. That, combined with his unshakeable conclusion that he should have been the custodial parent in the first instance when this Court ruled against him, have [led] him to defend all of the defendant's allegations superficially and without any analysis of their impact on the parties and the child.

The record supports the district court's findings.

[¶44] In determining the best interests of a child, the legislature has identified several factors that the court must consider. Wyo. Stat. Ann. § 20-2-201. Although not specifically referenced, the district court's analysis dovetails with those factors identified in Wyo. Stat. Ann. § 20-2-201(a)(v)-(vii) (LexisNexis 2011):

(v)    How the parents and each child can best maintain and strengthen a relationship with each other;

(vi)    How the parents and each child interact and communicate with each other and how such interaction and communication may be improved;

(vii)    The ability and willingness of each parent to allow the other to provide care without intrusion, respect the other parent's rights and responsibilities, including the right to privacy.

17

From my perspective, application of those factors to Father's conduct in this case would justify modification of visitation even if Father had not moved to Wellington.

[¶45]  I would also affirm the district court's decision to award attorney fees to Mother. Father does not challenge the hourly rate of Mother's attorney.  The fees awarded were a fraction of the fees incurred by Mother in the post divorce proceedings.  Again, from my perspective, the district court would have been justified in reimbursing Mother in full for all attorney fees incurred by Mother.  The district court, however, in the exercise of its discretion opted to limit the attorney fee award to those associated with Father's unsuccessful motions to compel.  In response to the district court's order, Mother's attorney submitted an itemization of those costs.  Predictably, Father contested the costs. His arguments were twofold.  First, he contended that Mother was bound by a trial exhibit that was never admitted into evidence.  The majority correctly concludes that the exhibit could not have been considered by the trial court.  Secondly, Father argued that the fees were "manufactured" or "all made up."  The district court flatly rejected that allegation: "I reject that [trial counsel] has . . . just dummied up those fees."

[¶46]   We review an award of attorney fees for abuse of discretion and typically defer to the trial court's judgment.  *Tolin v. State*, 2013 WY 9, ¶ 3, 294 P.3d 879, 881 (Wyo. 2013).  As we recently commented, "We can hardly think of a sphere of judicial decision making in which appellate micromanagement has less to recommend it."  *Id.*, quoting *Fox v. Vice*, __ U.S. ___, 131 S.Ct. 2205, 2216, 180 L.Ed.2d 45 (2011).  In this case, the district court was intimately familiar with the parties, the issues, and the overall litigation. It was in an excellent position to evaluate the claim for attorney fees and determine whether the time claimed was reasonable.  According to the district court, "I compared it to the work done, the timing of the motions, the responses, it matches."  The district court was in a far better position than this Court to determine the reasonableness of the fees, and I am unable to reach the conclusion that there was an abuse of discretion.

[¶47]  Finally, I would award Mother reasonable attorney fees incurred in this appeal. Such fees are statutorily authorized to enable a party "to carry on or defend the action." Wyo. Stat. Ann. § 20-2-111; *Hendrickson v. Hendrickson*, 583 P.2d 1265, 1268 (Wyo. 1978).  Father is an attorney representing himself in litigation at the trial level and in this appeal.  Mother has incurred thousands of dollars in attorney fees in post divorce litigation prior to this appeal.  The district court determined that Mother's monthly net income for child support purposes is $3,378.15.  Mother deserves a level playing field and reimbursement of attorney fees as authorized by statute is justified in this case.