# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 165

OCTOBER TERM, A.D. 2014

December 17, 2014

BRANDON LEE JENSEN,

Appellant
(Plaintiff),

v.

S-14-0085

MARGARET E. MILATZO-JENSEN,

Appellee
(Defendant).

*Appeal from the District Court of Laramie County*
*The Honorable Thomas T.C. Campbell, Judge*

*Representing Appellant:*

Brandon L. Jensen, pro se, of Budd-Falen Law Offices, LLC, Cheyenne, Wyoming.

*Representing Appellee:*

Douglas W. Bailey, of Bailey, Stock & Harmon, P.C., Cheyenne, Wyoming.

*Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**BURKE, Chief Justice.**

[¶1]    Appellant, Brandon Lee Jensen (Father), challenges the district court's decision to eliminate his right to claim abatement of child support owed to Appellee, Margaret E. Milatzo-Jensen (Mother).  He also claims the district court abused its discretion in denying his claim for prejudgment interest on amounts owed by Mother for day-care expenses.  We affirm.

## ISSUES

[¶2]    Father presents two issues:

> 1. Whether the district court erred in eliminating Father's right to claim abatements pursuant to Wyo. Stat. § 20-2-305; and

> 2. Whether the district court erred in denying prejudgment interest to Father for amounts owed by Mother.

## FACTS

[¶3]    The parties were married in 2003.  The marriage produced one child, a daughter born in 2004.  The parties divorced in May of 2007.  Mother was awarded primary residential custody of the child, subject to Father's visitation.  The divorce decree provided that "the parties shall each pay one-half of the monthly daycare costs, however, when [Father] begins making child support payments, he shall have no obligation to continue paying one-half daycare expenses."  The parties subsequently entered a Joint Stipulation Modifying Child Visitation and Decree of Divorce which increased Father's extended visitation during the summer from two one-week periods to sixty days.

[¶4]    In October, 2008, Mother filed a petition to modify Father's visitation.  Before that petition was resolved, Father moved from Cheyenne, Wyoming to Wellington, Colorado.  Following a hearing in March, 2011, the district court entered an Order Modifying Visitation.  The court found a material change in circumstances based on Father's move to Colorado, as well as Father's conduct towards Mother.  The court granted Mother's petition, eliminating Father's overnight weekday visitation.  Father, however, continued to have the sixty-day summer visitation.  The court also denied Father's request to modify child support and Father's requests for child support abatement.  The court, however, partially granted Father's request for reimbursement of day-care expenses incurred while Father exercised visitation during the summer and ordered Mother to pay one-half of the day-care expenses.

1

[¶5]   Father appealed and we addressed his challenge to the district court's Order Modifying Visitation in *Jensen v. Milatzo-Jensen*, 2013 WY 27, 297 P.3d 768 (Wyo. 2013). We affirmed the district court's modification of visitation and reversed the denial of Father's requests for child support abatement. We also held that the "district court abused its discretion by only partially reimbursing Father for day-care expenses because the divorce decree did not require Father to pay any day-care expenses while he was paying child support." *Id.*, ¶ 39, 297 P.3d at 780.

[¶6]   In September, 2013, Father filed a motion requesting that the district court enter judgment against Mother for unpaid day-care expenses incurred by Father. Father's motion also included a request for prejudgment interest. In response, Mother filed a motion to modify the divorce decree as it related to day-care expenses. In her motion, Mother contended that Father was seeking reimbursement for expenses that were not "day-care expenses" within the meaning of the decree. She also contended that she could not afford to pay the "day-care" expenses incurred by Father. She requested that the decree be modified to define "day-care" expenses. She also requested that Father be required to bear all day-care expenses during his summer visitation.

[¶7]   Following a hearing, the district court entered its Order on Pending Motions on December 12, 2013. The court granted Father's outstanding claims for child support abatement and limited Mother's annual liability for day-care expenses to $1,772.52.[1] The court also ruled that Father "may not claim child support abatements for any period [Father] is receiving day-care reimbursements from [Mother]." Additionally, the court denied Father's request for entry of judgment on the past due expenses and also denied Father's request for prejudgment interest. Father timely appealed the district court's order.

## DISCUSSION

### Abatement

[¶8]   In his first issue, Father contends the district court erred in eliminating his right to claim child support abatement during periods in which Mother pays for day-care expenses. We review the district court's decision for an abuse of discretion. *Plymale v. Donnelly*, 2007 WY 77, ¶ 41, 157 P.3d 933, 942 (Wyo. 2007).

> Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means

---

[1] The district court arrived at $1,772.52 by averaging the day-care expenses incurred by Father from 2011 through 2013.

2

exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. [*Johnson v. Johnson*, 11 P.3d 948, 950 (Wyo. 2000)]; *Vaughn v. State*, 962 P.2d 149, 151 (Wyo. 1998). We must ask ourselves whether the trial court could reasonably conclude as it did and whether any facet of its ruling was arbitrary or capricious. *Johnson*, 11 P.3d at 950. In accomplishing our review, we consider only the evidence in favor of the successful party, ignore the evidence of the unsuccessful party, and grant to the successful party every reasonable inference that can be drawn from the record. *Id.*

*Opitz v. Opitz*, 2007 WY 207, ¶ 7, 173 P.3d 405, 407-08 (Wyo. 2007) (quoting *Belless v. Belless*, 2001 WY 41, ¶ 6, 21 P.3d 749, 751 (Wyo. 2001)). Ultimately, in determining whether an abuse of discretion occurred, our core inquiry is the reasonableness of the district court's decision. *Bagley v. Bagley*, 2013 WY 126, ¶ 6, 311 P.3d 141, 143 (Wyo. 2013).

[¶9] In reaching its decision to eliminate Father's right to abate child support, the district court explained:

> The Court notes [Father] may receive full reimbursement for the expense of day-care, while he has the parties' minor child in his care and custody, and could also seek to reduce his child support obligation, monies which are slated for [the] minor child's exclusive benefit. *See Kimble v. Ellis*, 2004 WY 161, ¶ 8, 101 P.3d 950, 953 (Wyo. 2004). The Court finds that abatements should be eliminated and should not be granted for any period [Father] is receiving day-care reimbursements from [Mother] as the purposes of abatements would not be served and the burden created by abatement is one directly related to support of the child.

The district court's analysis is supported by the undisputed facts of this case and is in accord with our precedent.

[¶10] Father's monthly support obligation is $724.66. He claims that he is entitled to abate that support obligation by 50% during his sixty days of summer visitation. If his support obligation is abated, mother will net only $362.33 in monthly support. During that same period, she remains liable for all child care expenses incurred by Father up to a maximum of $1,772.52. In practical terms, Mother's child care expense obligation exceeds her child support income by nearly $1,000. In the meantime, she must maintain

3

the custodial home. As the district court correctly observed, the purpose of the abatement statutes would not be served if that situation were allowed to continue.

[¶11] In *Plymale v. Donnelly*, we addressed and rejected a non-custodial parent's claim that his child support obligation should abate entirely while the children were in his care during the summer months. We recognized that the purpose of abating child support payments is "to reallocate those costs that decrease for the custodial parent and increase for the non-custodial parent during times of extended visitation." *Id.*, ¶ 39, 157 P.3d at 941. We recognized that many of the custodial parent's costs were fixed and do not decrease while the child is visiting the non-custodial parent:

> [O]ne commentator has explained that
>
>> the custodial parent's fixed costs-rent or mortgage payments, utilities, car maintenance, and medical insurance-have not decreased as a result of the visitation. Even some of the variable costs-clothing, for example-may not be affected by the extended visitation, because the child probably will bring clothes and other necessities along.
>>
>> The only expenses sure to decrease for the custodial parent during that . . . time are food and entertainment. Food costs are estimated to be only 18.8 to 22.5 percent of the total annual expenditures on a child, while entertainment accounts for 9.6 percent. Therefore, the custodial parent likely decreases expenditures by only 30 percent during . . . visitation. . . .
>
> Karen A. Getman, *Changing Formulas for Changing Families: Shared Custody Must Not Shortchange Children*, 10 Spg Fam. Advoc. 47, 49 (1988).

*Id.*, ¶ 39, 157 P.3d at 941-42. Ultimately, we concluded that "While the specific statistics may vary, it cannot be denied that a custodial parent's expenditures on behalf of the children do not decrease by one hundred percent (100%) while the children are on extended visitation." *Id.*, ¶ 39, 157 P.3d at 942. We cited, with approval, authority from other jurisdictions where courts have concluded that full abatement of the support obligation is improper.

> Recognizing that not all costs for the custodial parent

4

disappear during visitation, other courts considering the issue have concluded that abatement of the full amount of child support during times of extended visitation is improper. For example, in *Abbott v. Abbott*, 2001 OK 31, 25 P.3d 291, 294 (Okla. 2001), the Oklahoma Supreme Court reversed a district court's order allowing the abatement of 100% of the support order reasoning that "[m]ost expenses borne by the custodial parent for the maintenance of the child remain fixed and constant for that parent even though the child is visiting with the other parent." Utilizing a similar approach, the court in *Flanagan v. Flanagan*, 656 So. 2d 1228, 1231 (Ala. 1995), explained:

> The custodial parent's obligation to provide for the child cannot conveniently be segmented on a month to month basis. The parent must provide shelter, clothing, toys, furniture and many other items that last beyond a month, and the cost of which must be amortized over a longer period of time than reflected in a monthly child support obligation. In the instance where the visitations are of a short duration and dispersed over a period of time it would impose a penalty on the child to suspend the support payments during visitation. . . . We conclude that [the] husband's child support payment should not be suspended during the children's summer visitation with him.

(quoting *In re Marriage of Burns*, 107 Ore. App. 167, 811 P.2d 654, 657 (Ore. Ct. App. 1991) (quotation marks omitted)). *See also Bondi v. Bondi*, 255 Neb. 319, 586 N.W.2d 145, 147 (Neb. 1998) (explaining that "[t]he fixed obligation of the custodial parent to provide the necessities of life for his children is a continuing one and does not cease during the temporary absences of the children while on visitation").

*Id.*, ¶ 39 n.4, 157 P.3d at 942 n.4.

[¶12] We recognize that in this case, Father is not seeking abatement of one hundred percent of his child support obligation. Rather, he is requesting that he receive the statutory fifty percent reduction in his obligation. But that request cannot be viewed in a

5

vacuum. "[A]batement of . . . support payments impacts the amount of support available to meet the children's needs . . . ." *Plymale*, ¶ 30, 157 P.3d at 940. If Father is permitted to receive the fifty percent abatement of his support obligation, Mother's financial ability to care for the child is indisputably compromised.

[¶13] Father does not take issue with the district court's conclusion that continuation of his right to receive abatements is at odds with the purpose of the abatement statutes. Instead, he claims that the district court lacked authority to address abatement because (1) the establishment or modification of child support was not at issue; (2) the district court did not identify any material change in circumstances to justify the modification of the divorce decree, and did not determine that modification was in the child's best interests; and (3) under principles of *res judicata*, the issue of his entitlement to child support abatement should not have been addressed because it could have been raised in an earlier proceeding. We find no merit in Father's contentions.

[¶14] With respect to Father's first claim, we find that modification of child support was at issue. Mother's motion sought a modification of the decree as it pertained to child care expenses. She claimed that she could not afford to pay those expenses. Father does not provide citation to any authority that would suggest that child care expenses are not part of the child support equation. Wyo. Stat. Ann. § 20-2-307(b)(ii) (LexisNexis 2013) specifically recognizes that day-care expenses are a factor to be considered in determining a proper child support obligation. Because child support was at issue, the district court could properly address the abatement issues. *Plymale*, ¶ 41, 157 P.3d at 942.

[¶15] Further, the record reveals that there was a substantial change in circumstances after entry of the divorce decree. Under the original decree, Father was entitled to two weeks of visitation during the summer. When he moved to Colorado, summer visitation was increased to sixty days. In the first year, child care expenses totaled $667.50. In subsequent years, Father's "day-care expenses" mushroomed to $1,570.00 in 2011, $2,054.20 in 2012 and $1,693.35 in 2013. The increase in expenses coupled with the fifty percent reduction in Father's support obligation by operation of the abatement statute resulted in a net deficit in support received by Mother, compromising her financial ability as custodial parent to care for the minor child.

[¶16] Father's claim of a *res judicata* bar is difficult to understand. Again, he fails to cite to any authority in the child support or abatement context supporting his position. We addressed a similar issue in *Plymale*. In that case, the father asserted that the issues raised by the mother were barred by application of the doctrine of collateral estoppel. We rejected that claim:

. . . Mother is not challenging the 2004 order granting

6

abatement. Instead, she challenges Father's 2005 abatement claim. The question then, is whether Mother is estopped from challenging future abatement claims in light of the determination of Father's 2004 claim.

. . . The amount of abatement can be contested each time a new claim is made. As a result, it is inappropriate to apply the doctrine of collateral estoppel simply because a prior abatement for a different time period was approved.

*Id.*, ¶¶ 17-18, 157 P.3d at 937-38. Here, Father submitted previous abatement and expense claims for 2009 through 2013. Those claims ultimately were resolved in Father's favor and the result reached by the district court does not impact those claims in any fashion. The order entered by the district court addressed future expense claims, which were to be capped at $1,772.52, and future abatement claims. Those claims were not barred by the doctrine of *res judicata*.

[¶17] Finally, as to this issue, we must comment on Father's litigious nature. We have no doubt that the district court considered that in crafting its resolution of the expense issue. In 2011, the district court specifically addressed Father's use of the courts, noting that Father's actions appeared to be motivated by his desire for control, rather than the best interests of the child:

By way of example, the Court notes that the plaintiff, while asserting no change in circumstances has occurred, presents evidence himself of frequent communication difficulties, sometimes resulting in heated exchanges, and even the involvement of law enforcement authorities. In fact, at one point in his testimony the plaintiff describes his disappointment that law enforcement would not, upon his request, intervene to assist him as to his visitation issues. The plaintiff gives no weight whatsoever to the involvement of the police and how that [a]ffects [the child], who has aged from 3 1/2 to 6 during the pendency of this last round of litigation. It appears from the plaintiff's testimony that because the defendant, admittedly, also reacts inappropriately on some occasions when communication breaks down, that the Court should give little or no weight to his role in these exchanges. Other significant issues have developed since the entry of the last order including the plaintiff's refusal to communicate by email or text message with the mother. In addition, the plaintiff has on a number of occasions refused to allow the

participation of [child's] step-father, defendant's new husband. This occurs in circumstances such as not leaving the child at the mother's home merely because the mother doesn't happen to physically be there at the time. The plaintiff offers no explanation or justification as to how it is contrary to the safety or well-being of the child to drop her off at her own home.

The evidence was replete with comments by the plaintiff that clearly indicate he stands by his decision making in this regard without having given it the least bit of thought in terms of the impact on the best interests of his daughter. Instead, he evidences in all of his testimony and comments a strong desire to control everything about custody and visitation including his former wife's new family. That, combined with his unshakeable conclusion that he should have been the custodial parent in the first instance when this Court ruled against him, have [led] him to defend all of the defendant's allegations superficially and without any analysis of their impact on the parties and the child.

In July, 2012, in an effort to avoid future disputes between the parties, the district court entered an "Administrative Order" requiring the parties to seek permission from the court before filing further motions. The order was entered after a hearing on contempt motions filed by Father. Those motions were denied. In its Administrative Order, the court concluded that "although the parties have a right to be heard on legitimate Motions it appears that so many Motions have been filed in this case that it may be appropriate for the Court to screen those Motions before they are actually filed to determine if there are indeed legitimate grounds for filing the Motion." Prior to filing his motion for judgment and prejudgment interest, however, Father did not seek permission to file from the court and, at the hearing on his motion, he acknowledged that he had not complied with the court's order.

[¶18] In her motion to modify the divorce decree as it related to day-care expenses, Mother sought assistance from the court to eliminate disputes regarding "day-care expenses" and requested a modification that would "promote understanding and cooperation between the parties rather than confusion and bickering." The court's order eliminating abatement during periods in which Father exercised visitation constitutes a straightforward and effective approach to eliminating the parties' disputes regarding day-care expenses. In contrast, addressing the costs of each "day-care expense" submitted by Father would be inefficient and counter-productive. Neither side has appealed the district court's resolution of that issue. Ultimately, we agree with the district court that the

8

purpose of child support abatements would not be served if Father were allowed to claim abatements during these periods. We find no abuse of discretion in the district court's decision to eliminate Father's ability to claim child support abatement for periods in which Mother pays the costs of day-care.

**Prejudgment Interest**

[¶19] In Father's second issue, he claims the district court erred in refusing to grant his request for prejudgment interest on amounts owed by Mother. Father contends that the child care expenses for the years 2010 through 2013 were liquidated amounts and that he is entitled to receive prejudgment interest on those amounts. According to Father, "Mother should not be rewarded for her callous indifference to the demands imposed upon her by the district court. Prejudgment interest is appropriate to avoid unjust enrichment of Mother who has had the use of money which rightfully belongs to Father."

[¶20] Mother disputes that the amount of past due day-care expenses was a liquidated sum. She points out that the divorce decree did not define "day-care" and questions whether expenses for swimming lessons and summer camps are properly viewed as "day-care" expenses. She contends that the district court properly exercised its discretion in denying Father's motion for prejudgment interest.

[¶21] We have previously stated that the question of whether the trial court is entitled to award prejudgment interest in a particular case is a question of law that we review *de novo*, while the question of whether prejudgment interest should be awarded is reviewed for an abuse of discretion. *KM Upstream, LLC v. Elkhorn Constr., Inc.*, 2012 WY 79, ¶ 44, 278 P.3d 711, 727 (Wyo. 2012).

[¶22] As we noted in *Millheiser v. Wallace*, 2001 WY 40, ¶ 10, 21 P.3d 752, 755 (Wyo. 2001), Wyoming statutes provide for interest on judgments but do not specifically address an award for prejudgment interest. Wyo. Stat. Ann. § 1-16-102.[2] However, we

---

[2] Wyo. Stat. Ann. § 1-16-102 provides as follows:

**§ 1-16-102. Interest on judgments.**

(a) Except as provided in subsections (b) and (c) of this section, all decrees and judgments for the payment of money shall bear interest at ten percent (10%) per year from the date of rendition until paid.

(b) If the decree or judgment is founded on a contract and all parties to the contract agreed to interest at a certain rate, the rate of interest on the decree or judgment shall correspond to the terms of the contract.

have held that prejudgment interest is awarded in the appropriate case under the doctrine of unjust enrichment, as damages for the lost use of money. *KM Upstream*, ¶ 45, 278 P.3d at 727. We have approved of the award of prejudgment interest on liquidated sums in breach of contract actions when the amount due is readily computable by simple mathematical calculation. *Millheiser*, ¶ 10, 21 P.3d at 755.

[¶23] For purposes of our analysis, we will assume that the amounts due were liquidated and that the district court could, in the exercise of its discretion, award prejudgment interest. Nevertheless, under the circumstances of this case, we find no abuse of discretion in the district court's decision to deny Father's motion for prejudgment interest. We reach that conclusion for several reasons. First, Father's motion was filed in violation of the court's previous order requiring court approval prior to the filing of motions. That order had been entered in large part based upon Father's conduct in this case. Second, the district court denied Father's request to enter judgment against Mother. Father has not specifically appealed that aspect of the district court's order. If no judgment is entered, it is difficult to understand how a failure to award prejudgment interest could be error. Third, the district court declined to enter judgment against Mother on the basis that it would be "inequitable." The district court was very familiar with all aspects of this case and the position of the parties. The amount of "day-care" expenses incurred by Father greatly exceeded those that had been incurred in prior years. Mother had not consented to those expenses, and whether all of those expenses fit within the parameters of "day-care" was debatable. The district court ordered Mother to pay those expenses in their entirety but, in the exercise of its discretion, could reasonably conclude that tacking on prejudgment interest was not equitable. We also note that Wyo. Stat. Ann. § 1-16-102, which provides that an entry of judgment for child support payments "shall not bear interest" reflects a general policy against awarding interest in cases of late payment of child support. Based upon the foregoing, we find no abuse of discretion in the district court's refusal to grant prejudgment interest to Father.

[¶24] Finally, Mother requests that we award her costs and attorney's fees incurred in defending this appeal pursuant to W.R.A.P. 10.05. Under that rule, costs are awarded as a matter of course to an appellee if the decision of the lower court is affirmed. Mother is entitled to those costs. Attorney's fees, however, are awarded only if the court certifies that there was no reasonable cause for the appeal. *Id.* We are unwilling to make that certification in this case. There is, however, additional authority for an award of

---

(c) A periodic payment or installment for child support or maintenance which is unpaid on the date due and which on or after July 1, 1990, becomes a judgment by operation of law pursuant to W.S. 14-2-204 shall not bear interest.

attorney's fees that should be considered in this case.

[¶25]   An award of attorney's fees is statutorily authorized when necessary "to carry on or defend the action."  Wyo. Stat. Ann. § 20-2-111; *see also Hendrickson v. Hendrickson*, 583 P.2d 1265, 1268 (Wyo. 1978).  As was noted in *Jensen I*, ¶ 47, 297 P.3d at 782 (Burke, J., concurring in part and dissenting in part), Father is an attorney representing himself in litigation at the trial level and in the appeals generated in this case.  At the time *Jensen I* was decided, Mother had incurred thousands of dollars in attorney's fees in post-divorce litigation and additional fees were incurred in subsequent litigation and in this appeal.  The district court determined that Mother's monthly net income for child support purposes is $3,378.15.  *Id.*  The post-divorce litigation generated in this case is excessive and much of the responsibility for that litigation rests with Father.  Under the unusual facts of this case, we conclude that reimbursement of attorney's fees as authorized by statute is justified.  Accordingly, we award Mother costs and attorney's fees incurred in this appeal.  Mother's counsel shall submit a statement of costs and attorney's fees.  Upon review, we will enter an order making an appropriate award of costs and fees to Mother.

[¶26]   Affirmed.