KAUTZ, Justice.
[¶ 1] Appellant Michelle L. Meehan-Greer (Mother) appeals from the district court's order granting Appellee Robert S. Greer's (Father) petition to modify their divorce decree. Mother claims the district court abused its discretion by modifying the decree to extend Father's summer visitation, ordering her to pay a larger share of the children's medical expenses, and allowing Father to claim the children as dependents for tax purposes every other year.
[¶ 2] We affirm in part, and reverse and remand in part.
ISSUES
[¶ 3] Mother presents four issues on appeal:
1. Was there a material change in circumstances affecting the welfare of the children which allowed the district court to reopen the Divorce Decree and modify visitation?
2. If a material change in circumstances was proven, did the district court abuse its discretion when it awarded [Father] the summer visitation set forth in the Order ?
3. Did the district court abuse its discretion when it modified the division of the children's uncovered medical expenses?
*277 4. Did the district court abuse its discretion when it reallocated the dependent tax exemption?
Father concedes the district court erred by reallocating the dependent tax exemption, but rephrases the other issues as follows:
1. In view of the fact that the decree failed to provide for any holiday visitation, vacation time and/or extended summer visitation, and in view of the fact the lack of a set schedule was a source of ongoing conflict between the parents that clearly affected the children, was the district court's finding that there had been a material change in circumstances such that it should modify the decree[,] not to change custody[,] but to more clearly identify the dates for Father's visitation an abuse of discretion?
2. In view of the district court's ability to view the witnesses and judge the credibility of the parties, and in view of the children's need for certainty and consistency, was the district court's decision to modify the decree to more clearly identify the dates for Father's visitation in the children's best interests?
3. In view of the huge disparity in income between the parties, and in view of the fact that Mother did not object to the district court's modification to the child support award, was the district court's decision to order Mother to pay 75% of the unreimbursed medical expenses an abuse of discretion?
FACTS
[¶ 4] Mother and Father married in June 2000 and had three children-MG, born in 2004; WG, born in 2007; and GG, born in 2009. The parties divorced in 2013. They entered into a settlement agreement, which was incorporated into the stipulated divorce decree. They agreed they would have joint legal custody of the children, Mother would have primary custody, and Father would be entitled to visitation with the children every other weekend, one non-specified evening per week during the school year, and two non-specified weeknights during the summer. Holiday visitation was not addressed in the decree.
[¶ 5] Mother, a dentist, earned significantly more money than Father, a finish carpenter. Father's presumptive child support was $570 per month, but the parties agreed to deviate downward to a $0 monthly child support obligation. In return, Father agreed to pay half of some of the children's expenses, including their private school tuition, school supplies, camps, sport and school activities, and child care. The decree required Mother to provide health insurance for the children and the parties to share non-covered medical expenses equally. It also gave Mother the right to claim the children as dependents for tax purposes every year.
[¶ 6] The parties initially worked together to arrange visitation. With regard to child support, Mother provided monthly bills to Father for his share of the children's expenses. The amount of the bills fluctuated, with his half of the expenses for some months being thousands of dollars. Mother included expenses in her bills that did not fit the list of shared expenses in the divorce decree. For example, her bills included dog food, haircuts, Halloween supplies, and snacks. Father did not pay the monthly bills; instead, he would occasionally provide lump sum payments of child support.
[¶ 7] After a time, the parties began to quarrel over visitation and their respective parenting styles. Father retained counsel who sent a letter to Mother's attorney on November 19, 2015, proposing a new visitation schedule. On January 28, 2016, Mother's attorney sent a letter to Father's attorney alleging Father had exposed the children to pornography and physically abused them. It notified Father that Sheridan County Department of Family Services (DFS) was investigating the allegations. Although Mother had told Father the day before (January 27, 2016) that she was taking the children to counseling, she did not inform him of the allegations or the investigation.
[¶ 8] Father met with representatives of the sheriff's department and DFS to discuss the allegations on Friday, January 29, 2016. The three children were also interviewed by the authorities. The eldest child explained that Father had exposed him to pornography *278 by discussing sexual matters with him using graphic language and Father had watched a "rape" movie in the children's presence. All three children described instances where Father had hit them. They also told the authorities Mother had discussed Father's alleged abusive actions with them the night before the interviews. No abuse charges were filed against Father.
[¶ 9] Father filed a petition for modification of visitation and child support on February 12, 2016. On March 18, 2016, Mother filed a motion for an order to show cause asserting Father should be held in contempt of court for violating the decree by: 1) exposing the eldest child to pornography; 2) making disparaging remarks about her; 3) missing the children's school and sporting events; 4) failing to disclose his plans for travelling with the children; 5) not paying child support; and 6) damaging the shop awarded to her in the divorce.
[¶ 10] On November 2, 2016, the district court held an evidentiary hearing on Father's petition to modify the decree and Mother's contempt motion. Mother did not object to Father's request that the child support order be reopened and an order entered requiring him to pay the presumptive child support amount which, based upon the parties' incomes at the time of the hearing, was $560 per month. Father also requested that the children's medical expenses not covered by insurance be split between the parties in accordance with their respective incomes-82% to be paid by Mother and 18% to be paid by Father. Father did not request any change to the provision of the decree which allowed Mother to claim the children as dependents for tax purposes each year.
[¶ 11] With regard to visitation, Father asked for 45 days in the summer-15 consecutive days per month in June, July and August. He also requested a set holiday visitation schedule. Mother asserted Father had not established there had been a material change of circumstances since entry of the decree which would justify reopening the visitation provisions. She also claimed that revision of visitation was not in the children's best interests.
[¶ 12] The district court issued its Order Establishing Custody, Visitation and Child Support over six months later, on May 18, 2017. The court ordered Father to pay the presumptive child support amount-$560 per month. It also ruled that, in light of Mother's higher income, she would pay 75% of the children's non-covered medical expenses, while Father would pay the remaining 25% of the expenses, and gave each party the right to claim the children as dependents for tax purposes every other year.
[¶ 13] The district court found that Father had shown a material change in circumstances to justify reopening the visitation portion of the decree. It ordered that during the school year, Father would continue to get visitation with the children on alternating weekends but would not have the non-specified evening during the week that was part of the decree. The district court granted Father extended summer visitation with the children from one week after school ended in the spring until one week before school resumed in the fall, and set out specific holiday visitation. The district court also ruled that Mother had failed to meet her burden of showing Father should be held in contempt of court.[1] Mother filed a timely notice of appeal.
STANDARD OF REVIEW
[¶ 14] We review the district court's order by applying the abuse of discretion standard of review.
Custody, visitation, child support, and alimony are all committed to the sound discretion of the district court. Scherer v. Scherer, 931 P.2d 251, 253-54 (Wyo.1997) ; Triggs v. Triggs, 920 P.2d 653, 657 (Wyo.1996) ; Basolo v. Basolo, 907 P.2d 348, 352 (Wyo.1995). It has been our consistent principle that in custody matters, the welfare and needs of the children are to be given paramount consideration. Scherer, 931 P.2d at 254 ; Rowan v. Rowan, 786 P.2d 886, 890 (Wyo.1990) ; see also Gurney v. Gurney, 899 P.2d 52, 55 (Wyo.1995) ; and Fink v. Fink, 685 P.2d 34, 36 (Wyo.1984).... "We do not overturn the decision *279 of the trial court unless we are persuaded of an abuse of discretion or the presence of a violation of some legal principle." Fink, 685 P.2d at 36.
A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. Pinther v. Pinther, 888 P.2d 1250, 1252 (Wyo.1995) (quoting Dowdy v. Dowdy, 864 P.2d 439, 440 (Wyo.1993) ). Our review entails evaluation of the sufficiency of the evidence to support the district court's decision, and we afford the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party. Triggs, 920 P.2d at 657 ; Cranston v. Cranston, 879 P.2d 345, 351 (Wyo.1994). Findings of fact not supported by the evidence, contrary to the evidence, or against the great weight of the evidence cannot be sustained. Jones v. Jones, 858 P.2d 289, 291 (Wyo.1993). Similarly, an abuse of discretion is present " 'when a material factor deserving significant weight is ignored.' " Triggs, 920 P.2d at 657 (quoting Vanasse v. Ramsay, 847 P.2d 993, 996 (Wyo.1993) ).
Stevens v. Stevens, 2014 WY 23, ¶ 8, 318 P.3d 802, 805-06 (Wyo. 2014) (quoting Bingham v. Bingham, 2007 WY 145, ¶ 10, 167 P.3d 14, 17-18 (Wyo. 2007) ).
DISCUSSION
A. Visitation
[¶ 15] Wyo. Stat. Ann. § 20-2-204 (LexisNexis 2017) sets out the statutory requirements for modification of custody and visitation orders:
(a) Either parent may petition to enforce or modify any court order regarding custody and visitation.
....
(c) A court having jurisdiction may modify an order concerning the care, custody and visitation of the children if there is a showing by either parent of a material change in circumstances since the entry of the order in question and that the modification would be in the best interests of the children pursuant to W.S. 20-2-201(a)....
[¶ 16] Section 20-2-204(c) mandates a two-step inquiry to determine whether modification of a custody and visitation order is appropriate. See Bishop v. Bishop, 2017 WY 130, ¶ 11, 404 P.3d 1170, 1173 (Wyo. 2017).
The first step requires a showing that there has been "a material change in circumstances since the entry of the order in question." § 20-2-204(c). Because of the res judicata effect afforded custody orders, such a finding is a threshold requirement. Hertzler v. Hertzler, 908 P.2d 946, 949-50 (Wyo.1995). The district court does not properly acquire jurisdiction to reopen an existing custody order until there has been a showing of "a substantial or material change of circumstances which outweigh society's interest in applying the doctrine of res judicata" to a custody order. Kreuter v. Kreuter, 728 P.2d 1129, 1130 (Wyo.1986). In short, unless the district court finds a material change in circumstances, it cannot proceed to the second step-determining whether a modification would be in the best interests of the child.
Hanson v. Belveal, 2012 WY 98, ¶ 18, 280 P.3d 1186, 1193 (Wyo. 2012) (quoting In re TLJ, 2006 WY 28, ¶ 8, 129 P.3d 874, 876 (Wyo. 2006) ) (some citations omitted).
1. Material Change of Circumstances
[¶ 17] The party seeking modification of visitation must prove a material change of circumstances has occurred since entry of the governing order. Jensen v. Milatzo-Jensen, 2013 WY 27, ¶ 8, 297 P.3d 768, 772 (Wyo. 2013) ; Bishop, ¶ 12, 404 P.3d at 1173. The district court evaluates "the current circumstances of the parties in relation to their circumstances at the time the prior custody order was entered." TLJ , ¶ 10, 129 P.3d at 877 (citing Jackson v. Jackson, 2004 WY 99, ¶¶ 8-12, 96 P.3d 21, 24-26 (Wyo. 2004) ). See also , Morris v. Morris, 2007 WY 174, ¶ 7, 170 P.3d 86, 89 (Wyo. 2007). In order to be considered material and justify reopening the decree, the change in circumstances must affect the welfare of the children. See Hanson, ¶ 34, 280 P.3d at 1197. "A district court's finding concerning a material change in circumstances is principally a factual determination to which we accord great *280 deference." TLJ, ¶ 11, 129 P.3d at 877 (citing Yates v. Yates, 702 P.2d 1252, 1256-57 (Wyo. 1985) ).
[¶ 18] The district court found several material changes in circumstances had occurred since the entry of the original decree:
1. [Father] is remarried and his new spouse has a strong relationship with the children[.]
2. [Father] has obtained a permanent residence that is capable of housing the children[.]
3. [Mother] has entered into a new relationship and is engaged to be married.
4. The parties have become unable to communicate regarding visitation and their children[.]
[¶ 19] Mother claims Father's remarriage and her new relationship do not amount to material changes of circumstances. Although a parent's remarriage combined with other factors may constitute a material change in circumstances, we have held that remarriage, alone, is generally insufficient to establish a material change of circumstances. Fergussonv. Fergusson, 2002 WY 66, ¶ 18, 45 P.3d 641, 646 (Wyo. 2002). See also , Kappen v. Kappen, 2015 WY 3, ¶ 28, 341 P.3d 377, 384-85 (Wyo. 2015) ; Morris , ¶ 26, 170 P.3d at 93 ; Jackson v. Jackson, 2004 WY 99, ¶ 12, 96 P.3d 21, 26 (Wyo. 2004) (holding that the district court can consider several factors together in finding a material change of circumstances).
[¶ 20] The district court also noted Father had acquired a home that is more suitable for the children than where he was living at the time of the divorce. Mother claims this cannot be viewed as a material change in circumstances because the parties were aware when they divorced that Father would be purchasing a home. In fact, one of the terms of the property distribution in the decree was that Mother would make a down payment on a new home for Father "in the amount of 20% of the home's purchase price or $70,000, whichever amount is less." A material change of circumstance cannot be shown if the situation was contemplated at the time of the divorce. See, e.g ., Witowski v. Roosevelt, 2009 WY 5, ¶ 29, 199 P.3d 1072, 1080 (Wyo. 2009) ; Kidd v. Kidd, 832 P.2d 566, 569 (Wyo. 1992).
[¶ 21] If the parties' new relationships and Father's acquisition of a suitable residence were the only bases for the district court's finding of a material change in circumstances, we might be persuaded by Mother's argument that Father had failed to meet his burden of proof. However, the district court also relied upon another factor in finding a material change in circumstances-the inability of the parties to communicate regarding visitation and their children. Mother argues that the evidence does not support the district court's finding that the parties were unable to communicate or that any such communication problems affected the children's welfare. She claims that, although their interactions were tense at times, she and Father were able to communicate sufficiently to facilitate the visitation ordered in the decree.
[¶ 22] The evidence, when viewed in the light most favorable to Father, supports the district court's finding of a material change in circumstances based on the parties' inability to communicate. The decree did not specify when visitation would occur during the week, so Father had to negotiate those times with Mother. Father testified that initially following the divorce, the parties were able to agree on scheduling. He said, "At first ... both [parties] were trying really hard [and] things were going smooth[ly], but ... for the last couple of years it just g[ot] harder and harder to ... schedule." The evidence established Mother generally controlled the schedule, and it was often difficult for Father to negotiate dates that worked better for him. For example, Father asked that in the summer Mother allow him to exercise his weekday visitation in conjunction with his weekend visitation to make a block of several consecutive days so he and the children could take family trips and enjoy extended time together, but Mother would not agree. Father described a typical summer week as:
I would ... pick the kids up Friday at five, take the kids back to [Mother] at 5 o'clock on Sunday, pick them back up Monday at four, take them back to [Mother] Tuesday at four, and then get the kids the following Thursday from three to seven.... So it *281 was just a constant back and forth and no consistency whatsoever with the kids.
[¶ 23] As we said earlier, the change of circumstances must affect the welfare of the children in order to justify reopening the decree. See Bishop, ¶ 12, 404 P.3d at 1173-74. The lack of consecutive nights greatly hampered Father's ability to plan family trips or any extended stays with the children which, in turn, affected his relationship with them. Additionally, Father testified that the children had grown more anxious when transitioning from one household to the other, so the number of transfers required by the visitation provisions of the decree adversely affected them.
[¶ 24] Hundreds of text messages between Mother, Father and Father's wife and between Mother and the eldest child were admitted into evidence at the hearing. The texts showed the parties had difficulty communicating about the children's welfare. Mother did not trust Father's parenting and, instead of communicating with him about her concerns, often enlisted the eldest son to report to her while the children were at Father's house. The evidence indicated that the parents' ability to work together to address issues regarding the children was compromised. Considering the entire record, we conclude the district court did not abuse its discretion by finding the parties' difficulties in communicating about visitation and issues involving the children amounted to a material change in circumstances which affected the children and justified reopening the visitation provisions of the decree.
2. Best Interests of the Children
[¶ 25] After finding a material change in circumstances, the court determines whether modification of the decree will be in the best interests of the children. See Jensen, ¶ 8, 297 P.3d at 772 ; § 20-2-204(c). Wyo. Stat. Ann. § 20-2-201(a) (LexisNexis 2017) states in relevant part:
(a) .... In determining the best interests of the child, the court shall consider, but is not limited to, the following factors:
(i) The quality of the relationship each child has with each parent;
(ii) The ability of each parent to provide adequate care for each child throughout each period of responsibility, including arranging for each child's care by others as needed;
(iii) The relative competency and fitness of each parent;
(iv) Each parent's willingness to accept all responsibilities of parenting, including a willingness to accept care for each child at specified times and to relinquish care to the other parent at specified times;
(v) How the parents and each child can best maintain and strengthen a relationship with each other;
(vi) How the parents and each child interact and communicate with each other and how such interaction and communication may be improved;
(vii) The ability and willingness of each parent to allow the other to provide care without intrusion, respect the other parent's rights and responsibilities, including the right to privacy;
(viii) Geographic distance between the parents' residences;
(ix) The current physical and mental ability of each parent to care for each child;
(x) Any other factors the court deems necessary and relevant.
[¶ 26] The district court evaluated the factors from § 20-2-201. It concluded both parents have good relationships with the children, have the ability to provide for the children during their periods of responsibility, are fit and competent to care for the children, have demonstrated a willingness to accept care for the children at specified times, and have realized the best way to maintain and strengthen their relationships with the children is to spend time with them. The court found that both parents effectively communicate with each child. It specifically addressed issues related to a book, which included a number of swear words, that Father read to the younger son and the conversation he had with the older son about sex. The court stated that Father had acknowledged reading the book was a lapse of judgment and would not do it again. Regarding *282 the conversation about sex, the court recognized Father did not consult Mother, but noted that "oftentimes, the timing of discussions such as that is driven by circumstances" and it appeared Father acted reasonably after overhearing his son's peers discussing such matters in the locker room.
[¶ 27] The district court found, although the parties had difficulty communicating, they were good parents. It also found that Father's relationship with the children would be improved by spending more time together. The district court properly considered the factors set out in § 20-2-201 in concluding that it was in the children's best interests to extend Father's summer visitation.
[¶ 28] Nevertheless, Mother claims the district court's decision was erroneous because it did not take into account the eldest child's preference. The child testified at the hearing and stated he did not like to spend long periods of time with Father. The district court did not mention the child's testimony in its order. We have said the following with regard to a child's preference:
When a district court interviews a child, its decision should state the preference the child expressed and the extent to which it took the child's preference into consideration in arriving at a custody determination. Douglas [v. Sheffner, 79 Wyo. 172], 331 P.2d [840] at 845 [1958]. District courts should receive young children's statements with caution, keeping in mind that they may be easily influenced. Id. A child's expression of a preference is not conclusive. Id. at 844. Rather, a child's wishes are only one factor to be considered in determining custody. Curless v. Curless, 708 P.2d 426, 429 (Wyo.1985). However, consideration of a child's wishes aids the district court in making a custodial determination which is in the child's best interests. Love v. Love, 851 P.2d 1283, 1290 (Wyo.1993), quoting Yates v. Yates, 702 P.2d 1252, 1255 (Wyo.1985). A child's welfare is not served if his or her wishes are not considered by the district court. Love, 851 P.2d at 1291. Though the child's preference is but one factor to consider, his or her preference should receive "serious consideration." Id.
Holiday v. Holiday, 2011 WY 12, ¶ 12, 247 P.3d 29, 32 (Wyo. 2011) (some citations omitted). Although Holiday involved a custody determination, many of the same principles apply to visitation. We conclude, therefore, that the district court's order should have stated the child's preference with regard to visitation and the extent to which it considered that preference in making its visitation decision.
[¶ 29] However, the district court's failure to make appropriate findings in this case does not require automatic reversal because we are able to glean the child's preference from the record. See W.R.C.P. 61 and W.R.A.P. 9.04 (harmless error is disregarded). He stated that he did not want to spend extended periods of time with Father and cited several reasons for his preference. The child said Father's house was not as nice as Mother's and that Father gets mad and "rough" with the children when they misbehave. On the positive side, he stated that when the children spend time with Father, they go to the mountains, ride dirt bikes, and he enjoys woodworking in his Father's shop. When asked if there was something he would change about Father, the child said he wished Father would not get mad and "physical" with the children and would stop talking about "some not very great stuff."
[¶ 30] The child stated there was nothing about Mother that he would change, she's "just chill," and he loves the way she does things. The child testified that, at Mother's house, he plays on a basketball court she built for him in the backyard, plays "airsoft" wars with his friends, and watches movies in the theater in the basement. He indicated Mother was calmer than Father and disciplined the children by taking away privileges.
[¶ 31] Despite the eldest child's stated preference, we cannot say that the district court abused its discretion by concluding it was in the children's best interests to have a set visitation schedule with Father which included more time in the summer and specific holidays. The children's best interests are served by a visitation order with greater specificity to alleviate some of the contention between parents. Reavis v. Reavis, 955 P.2d 428, 433-34 (Wyo. 1998) (when parents cannot *283 cooperate, an order requiring joint decision-making regarding custody and visitation details is not in the children's best interests). See also Wyo. Stat. Ann. § 20-2-202 (LexisNexis 2017) (stating that the court shall "[o]rder visitation in enough detail to promote understanding and compliance"). The district court's decision to eliminate Father's weeknight visitation during the school year will ease the difficulties with transferring the children between households on school nights. Furthermore, the district court found that spending more time with the children would strengthen Father's bond with them. As we have said, a good relationship with both parents is essential to the children's wellbeing. Bishop, ¶ 23, 404 P.3d at 1177. Extending Father's summer visitation and providing set holiday visitation will facilitate a stronger relationship between him and the children and eliminate some of the transfers between households that make the children anxious.
[¶ 32] However, we have concerns about the length of Father's summer visitation. The district court ordered that the children would spend essentially the whole summer with Father-from one week after school ends in the spring until one week before school begins in the fall. Father did not request visitation for the entire summer. He requested 45 days (approximately six weeks), made up of 15 consecutive days each month. The evidence he presented at the hearing was directed at showing his proposed visitation schedule was in the children's best interests. Father's proposed schedule would give the parents roughly equal parenting time during the summer, and it would give Father and the children longer periods to enjoy extended visits and family trips.
[¶ 33] The district court did not explain its ruling, and we are not directed to any evidentiary support for the district court's order extending Father's visitation beyond what he requested. Father's proposed schedule would also be more in accord with the eldest child's stated preference. Although the two-week periods in the summer may be longer than the child desired, those periods certainly would be more acceptable to him than spending the entire summer with Father. Thus, the child's testimony, together with the fact that Father only requested visitation for about half of the summer and did not present evidence to specifically support visitation for the whole summer, leads us to conclude that the district court abused its discretion by granting visitation in excess of that requested by Father. We reverse that aspect of the district court's visitation order and remand for proceedings consistent with this decision.
B. Child Support
[¶ 34] Child support is subject to modification under Wyo. Stat. Ann. § 20-2-311(a) (LexisNexis 2017). The relevant portion of that statute permits a party to "[bring] an action for modification of a support order, based upon a substantial change of circumstances, at any time." Father's Petition for Modification of Visitation and/or Custody and Support sought modification of child support based on "the parties' current incomes" and any "modified custody (or visitation) provisions."
[¶ 35] The stipulated divorce decree, and the parties' settlement, established Father's presumptive support obligation at $570 per month. The decree and settlement deviated downward from that amount to a $0 per month child support because Father agreed and was ordered to pay one-half of some of the children's expenses. Those expenses were specifically defined by the parties as "school supplies, school tuition, camps, sport and school activities and child care." These specified expenses did not include medical expenses for the children.
[¶ 36] At trial, the district court recognized the potential of requiring Father to pay the presumptive support amount instead of half of the specified expenses, and asked Mother "do you have any problems or concerns about that?" Mother responded, "I do not." The parties submitted financial affidavits showing Mother's monthly income had decreased from $15,750 to $11,852.50, and Father's monthly income had decreased from $3,000 to $2,655.55. As discussed above, the district court adjusted Father's visitation by establishing a specific holiday schedule and increasing his summer visitation. The district court ordered Father to pay presumptive *284 child support of $560 per month, and ended his obligation to pay half of the enumerated expenses. Neither party challenges that aspect of the order on appeal. However, the district court also modified the decree's requirement that the parties split the children's medical expenses equally, and found that medical expenses should be paid roughly in proportion to the parties' respective incomes. Mother claims the district court abused its discretion when it changed the parties' obligations to pay non-covered medical expenses and allowed Father to claim the children as dependents for tax purposes every other year.
1. Medical Expenses
[¶ 37] Mother claims the district court abused its discretion by ordering her to pay 75% of the children's medical expenses that are not covered by insurance. We agree. The evidence did not demonstrate a material change in circumstances related to child support. Although the parties' incomes had changed, the presumptive support based on their incomes changed by only 1.75%. Section 20-2-311(a) requires a change of 20% or more in the monthly presumptive support amount to constitute a material change in circumstances. Although the district court increased Father's visitation, Father's additional time with the children would not result in him keeping the children overnight for more than 40% of the year.[2] Under Wyo. Stat. Ann. § 20-2-304(c) (LexisNexis 2016),[3] presumptive support is not adjusted unless a parent keeps the children overnight more than 40% of the year. Consequently, neither the parties' incomes nor the new visitation schedule constituted a material change in circumstances which would permit the district court to adjust child support. Under the unique facts of this case, the district court's authority to make any support changes was limited to Mother's agreement that Father should pay the presumptive amount and his obligation to pay specified expenses should be eliminated. The district court's order adjusting medical support went beyond Mother's agreement, and is reversed.
2. Dependent Tax Exemption
[¶ 38] The divorce decree allowed Mother to claim the children as dependents for tax purposes each year. Without being asked to do so, the district court changed that provision of the order to allow the parties to claim the children in alternating years. Father concedes the district court's order was erroneous, so we reverse on this issue.
CONCLUSION
[¶ 39] The district court correctly concluded Father had established a material change in circumstances to reopen the visitation provision of the divorce decree and Father was entitled to extended summer visitation and specific holiday visitation. It did, however, abuse its discretion by granting Father visitation for nearly the entire summer. Father requested only six weeks of summer visitation, and the evidence showed Father's proposed visitation schedule would address the problems that had arisen under the decree. It would require fewer exchanges, limit negotiations between the parties regarding parenting time, give Father extended periods of time with the children, and allow him to plan family trips.
[¶ 40] The district court properly reopened the child support provision of the decree and ordered Father to pay the presumptive child support amount, only because Mother consented to that specific action. The evidence did not establish any independent basis for the district court to modify child support or medical payments. Consequently, the district court had no authority to modify the original decree's provisions regarding medical payments. The parties have agreed the district court erred by allowing Father to claim the children as dependents for tax purposes every other year.
*285 [¶ 41] Affirmed in part, and reversed and remanded in part for proceedings consistent with this opinion.

Mother does not contest the district court's ruling on her contempt action.

40%=146 days.

This provision was in effect when Father filed his modification petition and at the time of the parties' hearing. An amendment, effective July 1, 2018, changes the required percentage to 25%.