FOX, Justice.
[¶1] Berkeley Booth (Father) and Melissa Booth (Mother) agreed when they were divorced that Mother would keep their former *905 marital residence in Oakley, Utah, just east of Salt Lake City, while Father moved to Rock Springs, Wyoming. They also agreed, and the district court ordered, that Father would exercise his visitation with their two children at the former marital residence in Oakley. Two years later, the parties asked the district court to modify the visitation schedule so that Father was no longer required to exercise his visitation at the Oakley home. The court granted the request, but also changed Father's visitation schedule to provide that the children would spend extended periods of time with him in Rock Springs. Because neither the district court's order nor the record provide support for a finding that the modification to Father's visitation schedule was in the children's best interests, we reverse that aspect of the court's order.
ISSUES
[¶2] 1. Did the district court violate Mother's due process rights when it modified the visitation schedule?
2. Was there a material change in circumstances that justified modifying the visitation schedule in addition to the visitation location?
3. Did the district court abuse its discretion when it modified Father's visitation without considering the children's best interests?
FACTS
[¶3] Father and Mother were married in 1996, and had two children: BJB, born in 2000, and PAB, born in 2003. On November 6, 2015, the parties divorced. The parties filed a Stipulation and Agreement for Divorce, in which they agreed to joint legal custody of the children, with Mother to have primary physical custody. The agreement also provided that Mother would have possession of the marital home in Oakley until June 30, 2021, when it would be listed for sale and the proceeds split. The district court incorporated this agreement into the divorce decree.
[¶4] Father lives in Sweetwater County, Wyoming, while Mother lives in Oakley, Utah. They agreed that it was in the children's best interests for Father to exercise his visitation at the parties' former marital home in Oakley. Father had alternating weekend visitation from Friday at 6:00 p.m. to Sunday at 7:00 p.m., and every Tuesday from 5:30 p.m. to 8:30 p.m. He also had visitation during spring break in odd numbered years and had four consecutive weeks during the summer, while Mother had two uninterrupted weeks in the summer. Father was responsible for his transportation costs from his home in Sweetwater County to the Oakley home.
[¶5] The agreement led to a rancorous situation that might have been predicted. In December 2016, Mother filed a motion for order to show cause that accused Father of failing to adhere to the agreement's provision that he would treat Mother with respect while he exercised his visitation at the Oakley home. After a hearing, the district court found Father in contempt "for failing to vacate the Oakley home at the conclusion of his visitation, and for having guests visit the Oakley home without [Mother's] permission." The court ordered Father to adhere to the parties' agreement and the court's divorce decree.
[¶6] On July 5, 2017, Father filed his Petition to Modify Decree of Divorce, in which he asserted that a "substantial change in circumstances has occurred" that warranted a modification. Father alleged that the travel distance between Sweetwater County and the Oakley home made it "nearly impossible ... to utilize [his] mid-week visits," Mother "arranged for ... [BJB] to work during Father's scheduled visits," and Mother was interfering with his parenting time while at the Oakley home. Father asked the district court to modify the decree to allow him to exercise his visitation "at a location of his choosing," to require Mother to split the transportation costs, or to allow Father to stay overnight at the Oakley home during his Tuesday visits. He also requested that the court require Mother to give him the "First Right of Refusal" to watch the children when she could not. In her response and counter-petition, Mother generally agreed that visitation at the Oakley home was no longer feasible because *906 they could not get along and that a "substantial change in circumstance" existed. She asked the court to modify the order to no longer allow Father to exercise his visitation at the Oakley home, but to still require him to exercise his visitation somewhere else in Summit County, Utah, near the Oakley home. In addition, she alleged that Father was interfering with her two consecutive weeks of summer break with the children. Father filed a response to Mother's counter-petition and agreed that continuing his visitation in Summit County was in the children's best interests.
[¶7] At the hearing on the cross-petitions, Father testified that he and Mother initially agreed to have Father exercise his visitation at the Oakley home so that the children would remain in a familiar environment and because "it would be difficult, if not impossible, for us to split the kids like traditional families and drive halfway and drop kids off." He testified that when he was at the Oakley home for visitation, Mother was also there and their animosity towards each other impeded his ability to have his scheduled visitation with the children and has "been very detrimental to the kids."
[¶8] Father testified that, because the divorce decree requires him to pay $1,500 towards the mortgage on the Oakley home, he is unable to buy or rent a home near Oakley where he could exercise his visitation. Thus, Father proposed having Mother sell or refinance the Oakley home in her name so he could obtain a loan to get a place nearby. Father also testified that he has generally been unable to exercise Tuesday evening visitation because of the distance between his home in Rock Springs and Oakley. At the conclusion of Father's testimony, the district court made the following suggestion:
I'm kind of in a position where my choices are to say tough it out and continue with the same visitation schedule that you have, that's all that there is.
....
... The other alternatives are to ... do a more normalized visitation. We'll split the cost of transportation, you get every other weekend wherever you want to go, except at the [Oakley] house.
....
Do it somewhere else, you get half the summer ....
....
-- why wouldn't I do something like that?
Father agreed that the court's suggestion was "reasonable" and "would be better than what we're doing right now."
[¶9] Mother testified extensively about why the current visitation at the Oakley home was not working. She "[felt] like a prisoner in [her] own home" when Father was exercising his visitation and agreed that the current situation was "clearly not working" and "would like [Father] to exercise visitation somewhere else." In response to the district court's suggestion that Father exercise visitation in Rock Springs and they split the costs of transportation, Mother asserted that "I don't think it's normal to go from Salt Lake to Rock Springs .... I think that's too far." When her attorney asked, "if it was between Oakley and Rock Springs, you would prefer him to pay the expenses," Mother stated, "[t]hat's correct." The court asked Mother:
So I'm not confident that [Father] is going to get a place in Salt Lake.
....
So that means Rock Springs. What do you think about that kind of visitation?
Mother responded:
I'm worried about that in that the oldest one does work pretty often, and so I don't know how that would work with him, and then I'm worried just because of the snow and driving[.] ... I just don't think that's the best thing to be driving back and forth that often and that late at night.
To which the court suggested:
[W]henever there's a distance, I try to make accommodations so that it doesn't necessarily have to be every weekend, as an example, making use of the three-day weekends. ... What do you think about that?
Mother agreed that would be "reasonable" if the "days were to equal out[.]" As to summer visitation, the court stated that it would "look to ... make the summer visitation longer for *907 the non-custodial parent because they have less time." However, although she agreed that did not "seem like a problem," Mother believed the four weeks Father currently had were sufficient. The court then suggested that Father receive most of the summer, with the exception of one week at the beginning and end, and one week in the middle where Mother would have the kids. The court also asked Mother's attorney if she thought "we're heading towards a more normalized visitation style." She agreed that was the case because the current agreement was not working.
[¶10] At the end of the hearing, the district court ordered Father to exercise his visitation anywhere he wished except for at the Oakley home. Father would have every other weekend, except if there was a three-day weekend in the month, in which case he could opt out of his normal weekend visitation and use the three-day weekend instead. The parties would split transportation costs "as long as the cost is for 150 miles or less," the distance between Oakley and Rock Springs. Finally, the court ordered that Father would have visitation the entire summer except for two weeks which Mother would choose in even-numbered years, Father would choose in odd-numbered years; and Father would also have every spring break. The court's written order contained these modifications.[1] This appeal followed.
STANDARD OF REVIEW
[¶11] We review a district court's modification of custody or visitation for abuse of discretion. Martin v. Hart , 2018 WY 123, ¶ 20, 429 P.3d 56, 63 (Wyo. 2018). "A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances." Jacobson v. Kidd , 2018 WY 108, ¶ 14, 426 P.3d 813, 820 (Wyo. 2018). "[W]e will not disturb the decision absent a procedural error or a clear abuse of discretion." Johnson v. Clifford , 2018 WY 59, ¶ 8, 418 P.3d 819, 822 (Wyo. 2018). In addition, whether a court violated a party's due process rights is reviewed de novo. KC v. State , 2015 WY 73, ¶ 16, 351 P.3d 236, 241 (Wyo. 2015).
DISCUSSION
[¶12] Mother argues that the district court violated her right to due process when it altered Father's visitation schedule even though Father did not include such a request in his written petition to modify. In addition, she asserts that the court abused its discretion when it altered the visitation schedule because the court did not make any express findings concerning whether there was a material change in circumstances or whether the modification was in the children's best interests. Although we conclude that the court did not violate Mother's due process rights and that a material change in circumstances existed sufficient to reopen the issue of visitation, we reverse the modification to Father's visitation schedule because the record does not support finding that the modification was in the children's best interests.
I. The district court did not violate Mother's due process rights when it modified the visitation schedule.
[¶13] Mother argues that the district court violated her right to due process when it modified not only the location of Father's visitation, but the visitation schedule itself. In particular, she challenges the court granting Father more time in the summer and every spring break when Father did not specifically request modification of the visitation schedule in his petition.
[¶14] "The touchstones of due process are notice and the opportunity to be heard, which must be appropriate to the nature of the case." KC , 2015 WY 73, ¶ 16, 351 P.3d at 241. "[T]he process due at any given time must reflect the nature of the proceeding and the interests involved." Id. at ¶ 32, 351 P.3d at 245. Mother contends that she was not given adequate notice that Father's *908 visitation schedule would be subject to modification.
[¶15] In Father's Petition to Modify Decree of Divorce, he specifically asked the district court to modify the visitation provision of the divorce decree. He raised the travel distance between his home and Mother's home that made it "nearly impossible ... to utilize [his] mid-week visits," and asked the court to allow him to exercise his visitation somewhere else. In her response, Mother agreed that the court should modify the order so that Father could not exercise his visitation at the Oakley home.
[¶16] While Father's petition did not include a specific request to modify the extent of his summer and spring break visitation, at the hearing, the district court raised the possibility of a more "normalized visitation" schedule that would grant Father every other weekend (which he already had) and "half the summer[.]" When Mother testified, the court asked her about granting Father every other weekend and "the whole summer," except for two weeks. In his closing remarks, Father's attorney argued that the court could impose a "standard visitation agreement" that "seems to make sense" given the distance between the parties, which would give Father every other weekend and "half of the summers." The court again brought up the prospect of a "more normalized visitation" to Mother's attorney, who agreed that may be a solution since the parties could not get along when Father was at the Oakley home.
[¶17] Mother had sufficient notice that visitation would be addressed at the hearing. During the hearing, the district court repeatedly brought up the prospect of doing a "normalized visitation" schedule. Mother never requested a continuance in response to the court's obvious consideration of modifying the visitation schedule. See ELA v. AAB , 2016 WY 98, ¶ 24, 382 P.3d 45, 50-51 (Wyo. 2016) (rejecting Father's due process claim, in part, because "[t]here is nothing in the record to indicate that counsel objected or asked to continue the hearing"). Mother had adequate notice that visitation would be addressed at the hearing, and thus, the district court did not violate Mother's right to due process.
II. There was a material change in circumstances that justified modifying the visitation schedule in addition to the visitation location.
[¶18] A material change in circumstances must "affect[ ] the welfare of the child" to a degree that "outweigh[s] society's interest in applying the doctrine of res judicata." Kappen v. Kappen , 2015 WY 3, ¶¶ 14-15, 341 P.3d 377, 382 (Wyo. 2015). "A determination that circumstances have materially changed is governed ... by an evaluation of the current circumstances of the parties in relation to their circumstances at the time the prior custody order was entered." Id. at ¶ 31, 341 P.3d at 385-86 (alteration in original).
[¶19] Both parents asserted that there was a "substantial change in circumstances" to justify modification of custody. Although the parties' agreement that a material change exists is not itself sufficient to warrant modification, where, as here, they have testified that the existing arrangement is not working or serving the children's best interests, the district court does not abuse its discretion when it finds a material change in circumstances. See Hanson v. Belveal , 2012 WY 98, ¶¶ 27, 30, 280 P.3d 1186, 1195, 1197 (Wyo. 2012). Father testified that the animosity had "been very detrimental to the kids[.]" Mother agreed: "I just think it's detrimental to the kids, what they see, and the relationship they see between us, and I'm afraid it's affecting them." Moreover, the court had previously heard about substantially similar problems and held Father in contempt for not abiding by the original decree. As the court recognized:
I think probably the most difficult thing in this whole thing has been Mr. Booth's ability to go from being a homeowner and resident of the house to being a guest, and that's naturally a difficult thing, but that's what needed to happen, and he's never been able to come to grips with that, and it's not surprising, and that's why it was a bad idea.
[¶20] Although the district court did not use the words "material change in circumstances,"
*909 that is clearly what it found: "And so that said, this doesn't work ... so we're left with what the Court can do. I can modify the visitation, and so that's what we'll do today." The record supports the district court's decision to modify custody based on a material change in circumstances that had negatively affected the children's best interests.
[¶21] Mother argues the substantial change in circumstances she agreed to in her counter-petition concerned only the location of Father's visitation and not the visitation schedule. Thus, she contends that the material change in circumstances limited the district court to modifying the location of visitation. We disagree. Once the issue of custody or visitation is reopened by a finding of material change in circumstances, the court is required to make an independent determination about what, if any, modification is in the children's best interest. See Forbes v. Forbes , 672 P.2d 428, 429 (Wyo. 1983) ("It is well settled that the district court is not bound to accept a stipulation of the parties and that the court's major consideration in determining custody of minor children is the welfare of those children."); see also Mann v. Green , 2012 WL 2948198, *2 (Del. 2012) ("[T]he judge has broad statutory authority to modify visitation orders in the 'best interests of the child,' even if the parent has not specifically requested that relief in the Petition to Modify Visitation."). Once a material change in circumstances has been found, a court may consider all factors that affect the best interests of the children, and is not limited to the factors identified by the parties.
III. The district court abused its discretion when it modified Father's visitation without evidence in the record that the change was in the children's best interests.
[¶22] Once a court finds a material change in circumstances, it must determine whether a modification is in the children's best interests. Wyo. Stat. Ann. § 20-2-204(c) (LexisNexis 2017). To make that determination, it must consider the following factors:
(i) The quality of the relationship each child has with each parent;
(ii) The ability of each parent to provide adequate care for each child throughout each period of responsibility, including arranging for each child's care by others as needed;
(iii) The relative competency and fitness of each parent;
(iv) Each parent's willingness to accept all responsibilities of parenting, including a willingness to accept care for each child at specified times and to relinquish care to the other parent at specified times;
(v) How the parents and each child can best maintain and strengthen a relationship with each other;
(vi) How the parents and each child interact and communicate with each other and how such interaction and communication may be improved;
(vii) The ability and willingness of each parent to allow the other to provide care without intrusion, respect the other parent's rights and responsibilities, including the right to privacy;
(viii) Geographic distance between the parents' residences;
(ix) The current physical and mental ability of each parent to care for each child;
(x) Any other factors the court deems necessary and relevant.
Wyo. Stat. Ann. § 20-2-201(a) (LexisNexis 2018 Supp.). No single factor is determinative. However, the record must support the district court's determination that the modification was in the child's best interest. "To play fair, a trial judge relying on discretionary power should place on record the circumstances and factors that were crucial to his determination. He should spell out his reasons as well as he can so that counsel and the reviewing court will know and be in a position to evaluate the soundness of his decision." Reavis v. Reavis , 955 P.2d 428, 431-32 (Wyo. 1998) (citation omitted), overruled on other grounds by Bruegman v. Bruegman , 2018 WY 49, ¶ 16, 417 P.3d 157, 164 (Wyo. 2018). The more "unconventional" the arrangement, the more important it is for the *910 court to articulate its reasoning. Martin , 2018 WY 123, ¶ 20, 429 P.3d at 63. Where the court does not make explicit findings regarding the best interest factors, we can piece together the court's reasoning based on the record before us. See Meehan-Greer v. Greer , 2018 WY 39, ¶ 29, 415 P.3d 274, 282 (Wyo. 2018) ; Zupan v. Zupan , 2010 WY 59, ¶ 31, 230 P.3d 329, 338 (Wyo. 2010) ; Jackson v. Jackson , 2004 WY 99, ¶ 15, 96 P.3d 21, 26 (Wyo. 2004). However, in every case, the record must support the district court's determination that the modification is in the children's best interests through "the proceeding transcripts, by opinion letter, or as findings in the written order" to allow appellate review. Id. at ¶ 15, 96 P.3d at 26.
[¶23] In this case, the district court's order does not contain any reference to the factors at § 20-2-201(a), nor does the modification hearing transcript support finding that the change in Father's visitation schedule would be in the children's best interests. Even when the total amount of visitation is unchanged, the modification requires a basis to conclude that it is in the children's best interests. The original decree required Father to exercise his visitation in Oakley because both Father and Mother agreed that it was in the children's best interests to remain in a familiar environment. In Father's response to Mother's counter-petition, he continued to agree that visitation in Summit County remained in the children's best interests. The modification order changed that to require the children to essentially live in Rock Springs every spring break and nearly the entire summer-approximately a quarter of the year-without any finding or record support that this would be in the children's best interests. In addition, the modification order is silent on whether Father's mid-week visitation will continue.
[¶24] The absence of best interest rationale is particularly problematic when a district court orders a custody arrangement that neither party requested. In his closing argument, Father's attorney only asked for half the summer. Moreover, the issue of spring break came up for the first time in the court's decision. In Meehan-Greer , the father requested 45 days of summer visitation and only presented evidence and testimony to support that his request was in the children's best interests. 2018 WY 39, ¶ 32, 415 P.3d at 283. The district court awarded father summer visitation in excess of the 45 days he requested. Id. at ¶¶ 31-32, 415 P.3d at 283. Because the court did not explain its ruling, and the record lacked evidentiary support for finding that extending Father's summer visitation was in the children's best interests, we reversed that aspect of the order. Id. at ¶ 33, 415 P.3d at 283.
[¶25] Here, as in Meehan-Greer , the district court not only ordered visitation beyond what either party requested, but it made no finding that would explain why such visitation was in the children's best interests, and the record does not contain evidence that such a schedule was in the children's best interests. We therefore reverse the district court's order as it pertains to Father's visitation schedule.
CONCLUSION
[¶26] The district court did not violate Mother's due process rights when it revisited the visitation schedule. There was a material change in circumstances sufficient to reopen the court's original order. However, we reverse the district court's modification of Father's visitation schedule because the record does not support finding that the modification was in the children's best interests.

After the hearing and before the court entered its written modification order, Mother filed a motion for reconsideration and argued that the court should not have changed the summer visitation or spring break schedule because Father had not specifically asked for that in his petition. There is no order in the record on appeal ruling on Mother's motion for reconsideration. In any event, Mother timely filed her notice of appeal of the court's written modification order.