# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 64

APRIL TERM, A.D. 2020

May 22, 2020

AIMEE V. KIDD f/k/a AIMEE V. JACOBSON,

Appellant
(Plaintiff),

v.

S-19-0216

MATTHEW T. JACOBSON,

Appellee
(Defendant).

*Appeal from the District Court of Laramie County*
The Honorable Catherine R. Rogers, Judge

*Representing Appellant:*
Stephenson D. Emery, Williams, Porter, Day & Neville, P.C., Casper, Wyoming.

*Representing Appellee:*
Linda J. Steiner and Abigail E. Fournier, Steiner Law, LLC, Cheyenne, Wyoming.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]   In *Jacobson v. Kidd,* 2018 WY 108, ¶¶ 6, 32-33, 426 P.3d 813, 814-15, 823-24 (Wyo. 2018), we determined a material change of circumstances had occurred since entry of an order placing primary custody of the parties' children with Aimee V. Kidd (Mother). We remanded for the district court to determine whether a change of custody and/or visitation was in the best interests of the children. *Id.,* ¶ 33, 426 P.3d at 824. The district court awarded primary custody to Matthew T. Jacobson (Father) and granted Mother visitation. Mother claims the district court abused its discretion by prohibiting her from using alcohol during visitation.

[¶2]   We affirm.

## ISSUE

[¶3]   Mother presents the following issue for our review:

> Did the [d]istrict [c]ourt abuse its discretion in ordering [Mother] to abstain from consuming ***any*** alcohol during visitation with the [p]arties' minor children?

## FACTS

[¶4]   We briefly recite the relevant facts and course of proceedings here. A more detailed rendition of the facts of this case is set out in our prior decision, *Jacobson v. Kidd, supra*.[1]

[¶5]   Mother and Father married in 2007 and had two daughters—MJ in 2007 and KJ in 2008. *Jacobson,* ¶ 4, 426 P.3d at 814. The parties divorced in 2009, and the district court awarded primary custody of the children to Mother and visitation to Father. *Id.* The original decree incorporated a supplemental order which prohibited the parties from engaging in "any excessive drinking" or use of illegal substances. In 2011, Father filed a petition to modify custody based, in part, upon Mother's inappropriate use of alcohol. *Id.,* ¶ 5, 426 P.3d at 814. The parties stipulated to a modified decree in 2012, which maintained

---

[1] Mother argues we should not consider *Jacobson* in arriving at a decision in this case. We disagree. We routinely refer to decisions from earlier appeals when deciding later cases. *See, e.g.*, *Zupan v. Zupan,* 2016 WY 78, ¶ 3, 377 P.3d 770, 772 (Wyo. 2016) (referring to *Zupan v. Zupan,* 2010 WY 59, 230 P.3d 329 (Wyo. 2010)); *Mad River Boat Trips, Inc. v. Jackson Hole Whitewater, Inc.,* 818 P.2d 1137 (Wyo. 1991) (referring to *Mad River Boat Trips, Inc. v. Jackson Hole Whitewater, Inc.,* 803 P.3d 366 (Wyo. 1990)); *Matter of Adoption of BBC,* 849 P.2d 769, 771 (Wyo. 1993) (referring to *Matter of Adoption of BBC,* 831 P.2d 197 (Wyo. 1992)). Moreover, as we explain in detail below, the visitation order under review in this appeal was entered upon remand of *Jacobson,* so the visitation order was part of the modification action.

primary custody with Mother but increased Father's visitation and required Mother to attend counseling. *Id.,* ¶¶ 6, 22, 426 P.3d at 814-15, 822.

[¶6]    On September 29, 2015, Father filed a petition to modify the custody order to award him primary custody of the children. *Id.,* ¶ 7, 426 P.3d at 815. (This was the petition that led to the custody modification at issue in *Jacobson, supra,* and the visitation order at issue here.) At the hearing on Father's petition in May 2017, evidence was presented showing several instances between 2012 and 2017 of Mother's improper use of alcohol and controlled substances, often resulting in law enforcement involvement. *Id.,* ¶ 8, 426 P.3d 815-17.

- In 2012, Mother was arrested for walking on a highway while intoxicated;
- In 2014, a man told police that Mother arrived intoxicated at his residence and tried to have sex with him;
- In February 2015, police were called to a bar fight in Casper and found Mother intoxicated;
- In September 2015, one of Mother's ex-boyfriends called police to report Mother had been drinking, came to his house unannounced, and tried to get in bed with him. She subsequently pretended to take a bottle of controlled substances in a feigned suicide attempt;
- In January 2016, Mother and a friend "went out drinking" and later had sexual relations at her house. Mother posted on Facebook that she could not remember the night. She subsequently claimed she had been raped;
- In December 2016, police were called to a bar because Mother was involved in an altercation with the alleged rapist.

*Id.,* ¶¶ 8, 26, 426 P.3d at 815-17, 823.

[¶7]    The district court denied Father's petition for modification in June 2017, concluding he had failed to establish a material change of circumstances that affected the children. *Id.,* ¶ 12, 426 P.3d 818-19. Nevertheless, the district court noted Mother's use of alcohol and controlled substances was troubling.

> Since the entry of that June 5, 2012[,] Modified Decree, the evidence produced at trial would lead the [c]ourt to conclude that [Mother] has had numerous run-ins with the law, that she has struggled with her use of prescription drugs, and that she has struggled with appropriate and controlled consumption of alcohol.

*Id.,* ¶ 12, 426 P.3d at 818.

2

[¶8]   Father appealed, and we ruled the district court erred by concluding there had not been a material change in circumstances that affected the children.  *Id.,* ¶ 32, 426 P.3d at 824.  There were many factors relevant to the finding of a material change in circumstances, including Mother's unstable lifestyle, poor decision-making, and inappropriate use of alcohol.  *Id.,* ¶¶ 23-32, 426 P.3d at 822-24.  With regard to her alcohol use, we stated:

> As the district court recognized, Mother also had . . . problems with alcohol and prescription drugs.  Her feigned suicide attempt involved narcotics and she drank to excess on many occasions, some resulting in police involvement.  On the day after she was allegedly raped . . . , Mother posted on Facebook that she could not get out of bed or remember the night before. . . .  Mother's use of alcohol and drugs obviously is relevant to the children's lives.

*Id.,* ¶ 26, 426 P.3d at 823.

[¶9]   We reversed the district court's denial of Father's petition for modification and directed the district court to determine whether modification of the governing custody and visitation order was in the children's best interests.  *Id.,* ¶ 33, 426 P.3d at 824.  On remand, the district court awarded Father primary custody.  However, it apparently did not determine visitation or child support at that time.[2]

[¶10]  Around the time the district court awarded him custody, Father filed a motion for order to show cause alleging Mother was in contempt of court for violating various court orders.  On March 26, 2019, the district court held an evidentiary hearing to determine visitation, child support, and Father's contempt action.  The GAL presented evidence showing Mother had been involved in an incident at a bar in February 2019.

[¶11]  The district court announced its decision orally at a hearing on April 25, 2019, and subsequently entered a written order.  In general, it granted Mother visitation with the children on alternating weekends during the school year, certain holidays, and alternating weeks during the summer.  The court ordered Mother to refrain from using alcohol and to subject herself to chemical testing during the visitation periods.  The visitation order stated:

> This [c]ourt, in its original decision[,] and the Wyoming Supreme Court have found that appropriate use of controlled substances and alcohol are problematic in [Mother's] life and the Wyoming Supreme Court specifically found that

---

[2] Neither party designated the order granting Father primary custody as part of the record on appeal.  We are, however, able to glean the gist of the custody order from the order granting visitation and statements made by the court, counsel and witnesses at the March 2019 evidentiary hearing and the April 2019 decision hearing.

[Mother's] use of alcohol and drugs obviously is relevant to the children's lives. There was evidence that [Mother] was once again, at a bar in which people were intoxicated, at which there was fighting, and at which her live-in companion was intoxicated and was arrested. [Mother] is prohibited from using or being under the influence of alcohol or controlled substances while the minor children are in her care and she will submit to chemical testing twice daily . . . while the minor children are in her care. . . .

The district court also ordered Mother to pay child support and found her in contempt of court for several violations of its earlier orders.

[¶12] Mother appealed, claiming the district court erred by ordering her to refrain from using alcohol during visitation. She does not challenge other aspects of the visitation order, the contempt order, or the child support order.

## STANDARD OF REVIEW

[¶13] We review the district court's visitation order for an abuse of discretion.

Custody, visitation, child support, and alimony are all committed to the sound discretion of the district court. *Scherer v. Scherer,* 931 P.2d 251, 253–54 (Wyo.1997); *Triggs v. Triggs,* 920 P.2d 653, 657 (Wyo.1996). . . . We do not overturn the decision of the trial court unless we are persuaded of an abuse of discretion or the presence of a violation of some legal principle.

A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. *Pinther v. Pinther,* 888 P.2d 1250, 1252 (Wyo.1995). Our review entails evaluation of the sufficiency of the evidence to support the district court's decision, and we afford the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party. *Triggs,* 920 P.2d at 657; *Cranston v. Cranston,* 879 P.2d 345, 351 (Wyo.1994). Findings of fact not supported by the evidence, contrary to the evidence, or against the great weight of the evidence cannot be sustained. *Jones v. Jones,* 858 P.2d 289, 291 (Wyo.1993). Similarly, an abuse of discretion is present "'when a material factor deserving significant weight

is ignored.'" *Triggs,* 920 P.2d at 657 (quoting *Vanasse v. Ramsay,* 847 P.2d 993, 996 (Wyo.1993)).

> *Stevens v. Stevens,* 2014 WY 23, ¶ 8, 318 P.3d 802, 805-06 (Wyo. 2014) (quoting *Bingham v. Bingham,* 2007 WY 145, ¶ 10, 167 P.3d 14, 17–18 (Wyo. 2007)).

*Meehan-Greer v. Greer,* 2018 WY 39, ¶ 14, 415 P.3d 274, 278-79 (Wyo. 2018) (some citations and quotation marks omitted).

## DISCUSSION

[¶14]  We employ a two-step analysis in determining a request for a change in custody or visitation. *Jensen v. Milatzo-Jensen,* 2013 WY 27, ¶ 8, 297 P.3d 768, 772 (Wyo. 2013) (citing *In re TLJ,* 2006 WY 28, ¶ 8, 129 P.3d 874, 876 (Wyo. 2006)).  The first step requires a showing of a material change in circumstances since the most recent custody and/or visitation order. *Id.*; *Meehan-Greer,* ¶ 17, 415 P.3d 279-80.  Once that is shown, the court determines whether a change of custody and/or visitation is in the children's best interests. *Jensen,* ¶ 8, 297 P.3d at 772; *Meehan-Greer,* ¶ 25, 415 P.3d at 281.

[¶15]  In *Jacobson,* ¶¶ 32-33, 426 P.3d at 824, we ruled there was a material change in circumstances and "direct[ed] the district court to determine whether modification of the governing custody and visitation order [was] in the [children's] best interests."  The district court changed custody of the children; therefore, it needed to determine what visitation plan for Mother was in the children's best interests.  Wyo. Stat. Ann. § 20-2-202(a)(i) (LexisNexis 2019) ("The court may order visitation it deems in the best interests of each child and the court shall [o]rder visitation in enough detail to promote understanding and compliance[.]"). *See also, Johnson v. Clifford,* 2018 WY 59, ¶¶ 25-27, 418 P.3d 819, 827-28 (Wyo. 2018) (recognizing a change from joint custody to primary custody in one parent justified an order granting visitation to the other parent); *DJG v. MAP,* 883 P.2d 946, 947-48 (Wyo. 1994) (change in custody and visitation).

[¶16] Wyo. Stat. Ann. § 20-2-201(a) (LexisNexis 2019) governs the best interests analysis:

> In determining the best interests of the child, the court shall consider, but is not limited to, the following factors:
>
> (i) The quality of the relationship each child has with each parent;

5

(ii) The ability of each parent to provide adequate care for each child throughout each period of responsibility, including arranging for each child's care by others as needed;

(iii) The relative competency and fitness of each parent;

(iv) Each parent's willingness to accept all responsibilities of parenting, including a willingness to accept care for each child at specified times and to relinquish care to the other parent at specified times;

(v) How the parents and each child can best maintain and strengthen a relationship with each other;

(vi) How the parents and each child interact and communicate with each other and how such interaction and communication may be improved;

(vii) The ability and willingness of each parent to allow the other to provide care without intrusion, respect the other parent's rights and responsibilities, including the right to privacy;

(viii) Geographic distance between the parents' residences;

(ix) The current physical and mental ability of each parent to care for each child;

(x) Any other factors the court deems necessary and relevant.

*Id.*

[¶17]   Mother does not challenge the amount or times of visitation.  She contests only the provision prohibiting her from consuming any alcohol during visitation with the children.  Mother claims the evidence presented at the March 2019 evidentiary hearing was insufficient to justify that condition.

[¶18]   We noted in *Womack v. Swan,* 2018 WY 27, ¶ 34, 413 P.3d 127, 139 (Wyo. 2018), that a parent's alcohol use implicates § 20-2-201(a)(iii) (the relative competency and fitness of the parent) and (a)(ix) (the mental ability of the parent to care for the children).  Consequently, courts routinely limit parents' use of alcohol while they are with their children.  *See, e.g., Womack,* ¶ 7, 413 P.3d at 132 (ordering the mother "not to consume

any alcohol when the children [were] in her custody"); *Levene v. Levene,* 2014 WY 161, ¶ 7, 340 P.3d 270, 272 (Wyo. 2014) (conditioning the mother's unsupervised visitation with the children upon her maintaining sobriety); *Inman v. Williams,* 2008 WY 81, ¶ 7, 187 P.3d 868, 873 (Wyo. 2008) (prohibiting the parents from using alcohol around the children).

[¶19]  Mother asserts the only evidence the district court could properly consider regarding her alcohol use was that presented at the March 2019 evidentiary hearing.  She fails to recognize the visitation order was entered on remand of the custody modification order which was prompted by Father's 2015 petition.  The most recent custody and visitation order prior to that petition was the 2012 order.  Thus, all of the evidence of Mother's behavior after the 2012 order was fairly considered by the district court in making its visitation determination, including that presented at the 2017 and 2019 hearings.

[¶20]  The district court stated at the April 25, 2019, decision hearing:

> Finally, as it concerns restrictions and controls on [Mother] in connection with the visitations, specifically as it concerns alcohol and controlled substances, the guardian ad litem asked this [c]ourt to order that [Mother] be prohibited from use of controlled substances and alcohol while the [children] are in her care and that she be monitored for such. And I think it's incumbent on the [c]ourt to observe that the evidence at the March 26[, 2019,] hearing regarding [Mother's] use of alcohol was what I will call scant. There was limited testimony about one incident on February 16th, 2019, at a bar in Mills, and there was no additional evidence presented at the March 26, 2019[,] evidentiary hearing concerning [Mother's] use of controlled substances.  However, both this [c]ourt in . . . its original decision and the Wyoming Supreme Court have found that use of controlled substances and alcohol [is] problematic in [Mother's] life and the Wyoming Supreme Court specifically found that [M]other's use of alcohol and drugs obviously is relevant to the children's lives.

> This conclusion and the facts that led to that conclusion as well as the additional evidence that [Mother] was once again, at a bar in which people were intoxicated, at which there was fighting, and at which her live-in companion was intoxicated and was arrested does leave the [c]ourt to conclude that the guardian ad litem's recommendations in this regard are well taken.

> [Mother] will be prohibited from using or being under the influence of alcohol or controlled substances while the minor children are in her care and she will submit to chemical testing twice daily, . . . while the minor children are in her care.
> . . .
> In addition, [Mother] . . . shall not allow the children to be around anyone who is using, in possession of, or under the influence of alcohol or controlled substances while the children are in her care and custody.

[¶21]  The evidence presented at the 2017 and 2019 hearings supports the district court's determination.  As we described above, the evidence at the 2017 evidentiary hearing showed Mother has had significant problems with alcohol for years.  The evidence at the 2019 hearing showed she engaged in behavior similar to that described in *Jacobson* just one month prior to the hearing.  The GAL questioned Mother about the February 2019 incident:

> Q.    . . . On the night of February 16, 2019, were you at the Baja Beach Club also known as Stagger's Bar?
>
> A.    Very, very, very briefly.
>
> Q.    At approximately 11:00, you were there with George Michael Karaouni [her live-in companion], Brett Erickson, and Benjamin Ledford?
>
> A.    No.
>
> Q.    Were any of those people there that day?
>
> A.    Mike was there with his, um, I guess they were friends at the time, but they're not anymore, yeah, they were feeding him shots.  They were getting pretty rowdy.  I left and Cameron came and picked me up and I went home.
>
> Q.    Were you asked to leave the bar?
>
> A.    No, they were, I didn't (sic).
>
> Q.    Did you and Mr. Karaouni get into a fight?
>
> A.    No.

Q.     You did not get in any physical fight and had to be separated?

A.     No. No, Mike has never ever, ever been violent towards me, ever.

Q.     And Mr. Karaouni was arrested for public intoxication and trespassing?

. . .

THE WITNESS:     Yeah, I'm not entirely sure what happened other than from what Mike told me and he doesn't really remember much. Was – his friend then was supposed to drive him home and they had to go back for some reason –

Q.     Okay.

A.     -- Mike walked into the bar to use the bathroom and was arrested for trespassing and I think public intox[ication]. But he really doesn't have a recollection of that.

. . .

Q.     Are you aware that Mr. Ledford filed a citizen complaint, criminal complaint against you for assault that day?

A.     Yes.

[¶22]  The February 2019 incident was evidence of Mother's current behavior relating to alcohol. Although there is no direct evidence Mother was intoxicated during the episode at the Baja Beach Club, it is clear she was involved in an incident fueled by alcohol. Mother admitted her live-in companion was intoxicated and a citizen complaint for assault had been filed against her. The district court could reasonably infer Mother's behavior during that incident was, like many times before, affected by her use of alcohol.

## CONCLUSION

[¶23]  The district court properly considered evidence presented at the 2017 and 2019 hearings regarding Mother's behavior while using alcohol. This evidence was certainly relevant to the best interests of the children. The court did not abuse its discretion when it ordered Mother to refrain from using any alcohol during visitation with the children.

[¶24]  Affirmed.